**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Florencio ROLAN, Appellant.**

Superior Court of Pennsylvania.

Argued March 25, 2008.

Filed Dec. 23, 2008.

Bruce P. Merenstein, Philadelphia, for appellant.

Suzan Wilcox, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., PANELLA and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellant, Florencio Rolan, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas after a jury convicted him, for the second time, of first-degree murder and possession of an instrument of crime (PIC). We affirm.

¶ 2 On the evening of Friday, May 13, 1983, the victim, Paulino Santiago, and Robert[1] Aponte were selling marijuana near 17th and Wallace Streets in Philadelphia. Paulino's brother, Francisco, and Appellant were nearby, among a crowd estimated at thirty to fifty people. Around 8:30 P.M. a driver pulled up to buy a "nickel bag," five dollars worth of marijuana. Aponte and Paulino Santiago argued over who should get the money for the sale. Appellant sided with Aponte, his cousin. The argument continued for about fifteen minutes until Appellant departed for the house of a friend across the street. Francisco Santiago went to an abandoned house, at 1629 Wallace Street, a few doors from the corner, to relieve himself. His brother followed.

¶ 3 It is undisputed that a few minutes later, inside the abandoned house, Appellant killed Paulino Santiago with a single shot to the chest from a .22 caliber rifle, then fled out a back alley and left the neighborhood. Police found the rifle in the alley about a block away from the abandoned house. The next day Appellant fled to New York City, and was not apprehended until the following November, when he returned to Pennsylvania after waiving extradition.

¶ 4 Francisco Santiago, initially uncooperative with the police, testified at the preliminary hearing and at trial that Appellant had killed his brother after entering the abandoned building and demanding money. He further testified that he tried to grab the rifle away from Appellant, who "clicked" it at him before fleeing. At trial, after an on-the-record colloquy, in which his request to address the jury directly was repeatedly refused by the trial court, Appellant stated that he did not wish to testify. In May of 1984, a jury acquitted Appellant of robbery, but convicted him of first degree murder and PIC. The jury fixed his penalty at death,[2] and our Supreme Court affirmed the conviction. *Commonwealth v. Rolan*, 520 Pa. 1, 549 A.2d 553 (1988).

¶ 5 Appellant's appointed counsel, Melvin B. Goldstein, Esq., died on October 14, 1985, during the pendency of the appeal. In 1996, present counsel filed a petition under the Post Conviction Relief Act.[3] Testifying at the PCRA hearing in 1996, Appellant raised a claim of self-defense. He alleged that he followed Francisco Santiago into the abandoned house, and Paulino Santiago entered after he was already inside, charging at him with a kitchen knife.[4] He asserted that he came in unarmed, but fired in self-defense after he noticed a loaded rifle lying on the floor.

¶ 6 He further alleged that prior counsel had failed to investigate two witnesses for

---

1. Mr. Aponte is also referred to as "Roberto" Aponte in the record.

2. Appellant also received a sentence of one to two years on the PIC count.

3. 42 Pa.C.S.A. §§ 9541–9546.

4. No knife was ever found on or near the premises.

the trial who would have supported his self-defense claim, and merely forwarded the names Appellant gave him, Aponte and Daniel Vargas,[5] to the Commonwealth for investigation to determine if they were available to testify as alibi witnesses. He also claimed he had wanted to testify at trial, but prior counsel had prevented him from doing so.

¶ 7 Daniel Vargas also testified at the PCRA hearing. In 1984, contacted by a Commonwealth homicide investigator, Vargas had refused to cooperate. His signature appears on an interview document asking if he would be an "alibi" witness, indicating that he was **not** willing to give a statement. In 1996 Vargas, while serving a term in Graterford prison, signed a notarized affidavit prepared by Appellant's current counsel. (*See* Affidavit of Daniel Vargas, 2/16/96, Commonwealth's Exhibit C–30). In the affidavit he stated that he saw the three men enter the building together, (*id.* at ¶ 5), Appellant first, followed by Paulino Santiago, who "was chasing" Appellant into the house with a kitchen knife, shouting, "I'm going to kill you, Motherfucker." Vargas averred that "some time after" he heard a shot.

¶ 8 On direct examination at the PCRA hearing Vargas placed himself at the steps of the abandoned house, trying to prevent Paulino Santiago from entering. (N.T. Trial, 1/22/07, at 41). He also claimed he had helped Francisco Santiago carry Paulino's body out of the abandoned house to the street. On cross-examination, he first testified he was about a half a block away from the abandoned house, then a car length away, then claimed he was running towards the house when he heard the shot. (*Id.* at 100).

¶ 9 Challenged on cross-examination, Vargas repeatedly tried to explain away

omissions and discrepancies between his testimony and his affidavit by claiming that while he was in Graterford prison he only had five minutes to talk on the telephone with counsel. Pressed further, he accused the Commonwealth's attorney of trying to confuse him. He claimed that he signed the investigator's statement because he thought the request was to testify **against** Appellant, despite the plain language of the request on the form. He later denied signing the statement. He conceded on re-direct examination that apart from the encounter with the homicide investigator, he had not come forward earlier because he knew both families and "did not want to get involved." (*Id.* at 108). He did not explain his change of heart.

¶ 10 The PCRA court rejected Appellant's claim of ineffective assistance of counsel during the guilt phase of his trial as waived, summarily discussing the claims on the merits, but granted him a new sentencing hearing, concluding he received ineffective assistance of counsel during the penalty phase. A panel of this Court affirmed the grant of a new hearing on sentencing. *Commonwealth v. Rolan*, (No. 4581 Philadelphia 1997, Pa.Super. filed June 9, 1999). However, it disagreed that the claims of ineffective assistance at the guilt phase had been waived. Rather, the panel concluded on review that Appellant's claims of ineffective assistance at the guilt phase of the trial were without merit. *Id.* at 5–10. Specifically, it concluded that in view of Vargas' admitted motive for refusing to become involved, the assertion that trial counsel was ineffective for failing to call him as a witness was without arguable merit. *Id.* at 7.

¶ 11 Similarly, as to Robert Aponte, by then also deceased, the *Rolan* Court con-

---

5. Vargas was also variously identified, including by Appellant, as "Burgos" and "Vargos."

cluded that an unsworn statement Aponte signed and gave to a Commonwealth homicide investigator in which he claimed that he met Appellant on the street, and asked him "[W]as [he] alright, he didn't stab you or anything?" was not relevant to Appellant's ineffectiveness claim. Because Aponte did not claim to have witnessed the crime, or to have seen the victim with any sort of weapon, the Court opined that "the excerpt merely establishes that Aponte was aware that [Appellant] had engaged in an altercation and was not immune to the potential danger posed by life on the street." *Id.* at 8. Therefore, the Court concluded, the assertion of ineffectiveness for failing to call Aponte as a trial witness "must fail." *Id.*

¶ 12 The Court also decided that despite Santiago's incomplete recitation of his agreement with the Commonwealth, "in view of other evidence highly probative of [Appellant's] guilt, we cannot conclude that the Commonwealth's failure to expose the full extent of Santiago's 'deal' as a source of potential bias 'so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.'" *Id.* at 13 (citation omitted).

¶ 13 Finally, the Court also concluded that counsel was not ineffective for preventing Appellant from testifying. It found that despite Appellant's claim that he "consistently sought to testify at trial," the PCRA court properly decided that Appellant knowingly and voluntarily declined to testify at the trial in 1984 after consultation with counsel and a colloquy with the trial court. As previously noted, an on the record colloquy confirmed that Appellant insisted he be allowed to address the jury directly, and declined to testify after it

became clear the trial court would not permit him to do so. *Id.* at 10.

¶ 14 After a new penalty hearing on April 25, 2003, the jury deadlocked and Appellant was sentenced to life imprisonment. Appellant had also petitioned for a writ of *habeas corpus* in federal court. In 2004, after a hearing, the United States District Court for the Eastern District of Pennsylvania granted the writ with a stay to permit retrial,[6] based on Appellant's claim that he was denied effective assistance of counsel during the guilt phase. *Rolan v. Vaughn*, 2004 WL 2297407 (E.D.Pa.2004) (unpublished decision). It concluded that Appellant's trial counsel was ineffective for failing to investigate the two witnesses, Aponte and Vargas, to support a claim of self-defense, disregarding the analysis and findings of the Superior Court. The Third Circuit affirmed, albeit "[w]hile [ ] marvel[ing] at [Appellant's] serendipitous rifle[ ]." *Rolan v. Vaughn*, 445 F.3d 671, 683 (C.A.3 2006):

> "We believe that Rolan's conviction was only 'weakly supported by the record' and that the testimony of Vargas (and Aponte) is 'sufficient to undermine confidence in the outcome.' Therefore, it is manifest that the Superior Court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the PCRA trial court proceeding."

*Id.* (citations omitted).

¶ 15 Appellant was re-tried before a jury and on January 24, 2007 again convicted of murder of the first degree and PIC. At retrial, the 1984 preliminary hearing and trial testimony of the victim's brother, Francisco, who had died in 1998, was read into the record. Also at the second trial,

---

6. "The execution of the writ of habeas corpus is STAYED for 180 days from the date of this Order to permit the Commonwealth of Pennsylvania sufficient time to grant Petitioner a new trial and, if Petitioner is found guilty, a new sentencing." *Rolan v. Vaughn*, 2004 WL 2297407 at *15.

the 1996 PCRA hearing testimony of Vargas, who had died in April of 2006, was read into the record as part of the defense case. Further, despite his PCRA hearing claim of having been prevented from testifying in 1984, Appellant chose again to exercise his constitutional right against self-incrimination. (*See* N.T. Trial, 1/22/07 at 112).

¶ 16 On February 7, 2007, the court sentenced Appellant to life imprisonment on the count of first degree murder, and a concurrent one to two years on the PIC count, with credit for time served. This timely appeal followed. Appellant filed a timely Rule 1925(b) statement of matters complained of on appeal.

¶ 17 Appellant raises six questions, which we summarize here.[7] First, he challenges the admission into evidence of the prior testimony of the victim's deceased brother, Francisco Santiago, claiming he was deprived of his constitutional rights to confront the witness and due process by defense counsel's "constitutionally ineffective" cross-examination. His second, third and fourth claims allege prosecutorial misconduct during closing argument for commenting on the absence of a defense witness, Vargas, from the prior trial, commenting on his failure to assert a claim of self-defense at the first trial, and for comments about the evidence. Fifth, he asserts the admission of a 911 tape from an unidentified caller again deprived him of the right of confrontation. Finally, he claims the admission of evidence that he attempted to take money from the victim violated his constitutional right to protection against double jeopardy, because he had been acquitted of robbery at the first trial.

¶ 18 Appellant's first claim, and the over-arching theme of his appeal, is that he has yet to receive a "fair trial" (Appellant's Reply Brief at 1), because he was "shackled" by the testimony of the deceased witness, Francisco Santiago, read into the record from the first trial. Specifically, he alleges that ineffective cross-examination by his late trial counsel failed to undermine Francisco's testimony, particularly by not challenging him with a competing theory of self-defense. The error of the trial court in admitting this evidence, he argues, "carried over" the defects of the first trial into the re-trial, depriving him of his constitutional rights to due process and to confront the witnesses against him by "tainted testimony." (*Id.* at 11). We disagree.

¶ 19 Initially, we note that in permitting the testimony of Francisco Santiago, the trial court was following the pre-trial ruling of the Honorable Carolyn Engel Temin, thus observing the coordinate jurisdiction rule, an aspect of the well-settled doctrine of the law of the case. *See Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1331–32 (1995). Furthermore,

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record."

*Commonwealth v. Cooper*, 596 Pa. 119, 941 A.2d 655, 667 (2007) (citations omitted).

> Pursuant to 42 Pa.C.S.A. § 5917, the former testimony of a witness in a crimi-

---

**7.** Appellant's statement of questions involved violates Pa.R.A.P. 2116 by failing to state the questions in "the briefest and most general terms." Prolix and argumentative, the questions run 26 lines, substantially exceeding the suggested 15 lines.

nal proceeding who has since died is competent evidence admissible in a subsequent trial of the same criminal issue. *See also* Pa.R.E. 803.1. The Supreme Court has held, however, "that in order for a witness's prior testimony to be admissible pursuant to Section 5917, the defendant against whom the testimony is to be admitted at a subsequent proceeding must have been afforded **a full and fair opportunity to cross-examine the witness** at the first proceeding." *Commonwealth v. Chmiel,* [ ], 738 A.2d 406, 417 ([Pa.]1999), *cert. denied,* 528 U.S. 1131, [ ] (2000) (emphasis added). *Commonwealth v. Strong,* 825 A.2d 658, 662 (Pa.Super.2003), *appeal denied,* 577 Pa. 702, 847 A.2d 59 (2004), *cert. denied,* 544 U.S. 927, 125 S.Ct. 1652, 161 L.Ed.2d 489 (2005).

■ ¶ 20 Departure from either the coordinate jurisdiction rule or the law of the case doctrine is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed. *See Starr, supra* at 1332.

¶ 21 Here, Appellant does not argue that there has been any intervening change in the law or the facts. Rather he argues, albeit only implicitly, that manifest injustice occurred because Francisco Santiago's posthumous testimony was "tainted" by the putatively ineffective cross-examination at the first trial. This argument fails on several levels.

¶ 22 First and foremost, the taint argument fails because, as aptly noted by the Commonwealth, Appellant had the opportunity to present, and did present, a claim of self-defense on re-trial. (*See* Commonwealth's Brief at 15). Therefore, any per-

ceived defect in the defense mounted by deceased trial counsel, that is, the failure to develop and present a self-defense theory of the case, has been remedied.

Where an accused raises the defense of self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense. The Commonwealth sustains this burden if "it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety. It remains the province of the jury to determine whether the accused's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat."

*Commonwealth v. McClendon,* 874 A.2d 1223, 1229–30 (Pa.Super.2005) (some citations omitted).

The question of weight of the evidence is one reserved exclusively for the trier of fact who is free to believe all, part, or none of the evidence and free to determine the credibility of witnesses. We, as an appellate court, may not substitute our judgment for that of the trier of fact and may reverse the findings of the trier of fact only where the verdict is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Solano,* 588 Pa. 716, 906 A.2d 1180, 1186 (2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 2247, 167 L.Ed.2d 1096 (2007).

¶ 23 Here, the second jury heard Appellant's assertion of self-defense. It is beyond dispute that the jury as trier of fact

was free to believe all, part or none of the evidence. *See Solano, supra.* Nevertheless, Appellant argues that he received a defective re-trial, despite presenting his claim of self-defense, because his trial included cross-examination testimony which he asserts is ineffective because federal courts concluded that trial counsel was ineffective for not advancing a claim of self-defense. This is circular logic and is, in any event, belied by the record. As the Commonwealth appropriately observes, "no court among the many that have reviewed the record has ever found any ineffectiveness in prior counsel's cross-examination of Santiago." Commonwealth's Brief, at 13.

¶ 24 Secondly, although placing the effective assistance of deceased trial counsel directly at issue, Appellant fails to set out the ineffectiveness analysis required by Pennsylvania law. "In evaluating claims of ineffective assistance of counsel, we presume that counsel is effective." *Commonwealth v. Washington*, 592 Pa. 698, 927 A.2d 586, 594 (2007) (citation omitted). To overcome the presumption of effectiveness, Appellant must establish three factors: first that the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that Appellant was prejudiced. *See id.* "Counsel's assistance is **deemed constitutionally effective** once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test." *Commonwealth v. Harvey*, 571 Pa. 533, 812 A.2d 1190, 1196 (2002) (citations omitted) (emphasis added).

> Counsel has a duty to undertake reasonable investigations *or* to make reasonable decisions that render particular investigations unnecessary. *See Strickland v. Washington*, 466 U.S. 668, 691 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984).

> Where counsel has made a strategic decision after a thorough investigation of law and facts, it is virtually unchallengeable; strategic choices made following a less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation of the investigation. *See id.* at 690–91 [ ]. As noted, an evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight. *See id.* at 689 [ ]. Furthermore, reasonableness in this context depends, in critical part, upon the information supplied by the defendant. *See Peterkin v. Pennsylvania*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). Thus, assuming a reasonable investigation, where there is no notice to counsel of particular mitigating evidence, he cannot be held ineffective for failing to pursue it. *See Commonwealth v. Howard*, [ ] 719 A.2d 233, 238 ([Pa.]1998).

*Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 735 (2000).

¶ 25 Here, having failed to address the three prongs of traditional effectiveness analysis, Appellant fails to meet the burden of proving his ineffectiveness claim. "Counsel's assistance is deemed constitutionally effective once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test." *Harvey, supra.*

¶ 26 Moreover, Appellant's claim that prior counsel's cross-examination of Francisco Santiago was "grossly inadequate" rests on two legally inadequate assumptions: first, the failure "to take advantage of significant opportunities for impeachment;" and second, the failure to develop a theory of self-defense and to challenge Francisco with it. (*See* Appellant's Brief, at 33).

¶ 27 The assertion of significant opportunities for impeachment, other than the self-defense theory, rests on the incomplete disclosure of Francisco Santiago's agreement with the Commonwealth. Santiago testified that the Commonwealth had agreed to notify his corrections officer of his cooperation. Nonetheless, with the apparent acquiescence of the prosecutor, Santiago did not mention a promise of immunity from prosecution for drug or other charges arising out of the events of the night in question.

¶ 28 However, even the federal district court which granted the writ concluded that the ineffectiveness claim based on the failure to object to the prosecutor's failure to lay out the complete range of immunity assurances to Francisco, was "only incremental;" and did not affect the reliability of the original verdict. *Rolan v. Vaughn*, 2004 WL 2297407 at 5 n. 10. Furthermore, as already noted, our predecessor panel reviewed this claim and found no basis to conclude Appellant was prejudiced. (*See Commonwealth v. Rolan*, (No. 4581 Philadelphia 1997, Pa.Super. filed June 9, 1999) at 12–13). We agree, and under the law of the case doctrine decline to deviate from the conclusions reached by that panel on this issue. *See Starr, supra.*

¶ 29 Further, the claim that Francisco Santiago's testimony could have been impeached based on a fuller exploration of his agreement with the Commonwealth is baseless. His testimony at the preliminary hearing, before the agreement with the Commonwealth for immunity was finalized, was substantially identical to his testimony at trial. Likewise, even though he claimed to know nothing when first approached by the police at the crime scene, once he was removed to the police station he readily identified Appellant as his brother's assailant.[8]

¶ 30 The common sense inference is that Santiago's public defender negotiated an agreement preventing his prosecution for any possible complicity in the sale of marijuana that night. In his testimony, Santiago freely discussed the marijuana sales which sparked the argument that preceded Appellant's shooting of his brother. In any event, nothing in the record supports the claim that Santiago's testimony was altered or compromised by any agreement with the prosecutor. The Commonwealth raised Santiago's criminal record and defense counsel confirmed on cross-examination that Santiago was a convicted thief.

¶ 31 The final argument for ineffective cross-examination rests on the supposed failure of counsel to challenge Francisco Santiago based on the theory of self-defense. This assertion is based in turn on the federal courts' findings of counsel's ineffectiveness for failure to develop a theory of self-defense by investigating the evidence provided by Vargas and Aponte.

■ ¶ 32 "Absent a United States Supreme Court pronouncement, decisions of federal courts are not binding on state courts, even when a federal question is involved." *Commonwealth v. Lambert*, 765 A.2d 306, 315 n. 4 (Pa.Super.2000), *affirmed*, 769 A.2d 1205 (Pa.2000); *see also Commonwealth v. Jones*, 951 A.2d 294, 301

---

8. The police station statement was excluded by the trial court, pursuant to Appellant's motion *in limine*, on the basis that it was not subject to cross-examination. Without revisiting the trial court's evidentiary decision, we merely note for purpose of this review that the police station statement on the night of the murder was a prior statement consistent with Santiago's later testimony. We further note that Appellant tried vigorously, without success, to obtain the admission of Francisco Santiago's "know nothing" statement to the police at the crime scene, even though the **inculpatory** police station statement was excluded.

(Pa.2008) ("It is well settled that [the Pennsylvania Supreme] Court is not bound by decisions of federal courts inferior to the United States Supreme Court").

¶ 33 Here, while the retrial has rendered moot any challenge to the writ of *habeas corpus,* we are constrained to observe that we are not bound by the federal courts' findings of fact supporting their decisions. To the contrary, both federal courts were required to defer to the fact findings of the Superior Court pursuant to section 2254(e)(1) of the Antiterrorism and Effective Death Penalty Act.[9] Clearly, the previous panel of the Superior Court adjudicated Appellant's ineffectiveness claims on the merits.

¶ 34 Moreover, since original trial counsel was deceased before his effectiveness was challenged, he could not defend his strategic decisions, let alone explain the client confidences which may have informed them. Therefore, the only practical basis for assessing effectiveness of counsel beyond the cold record were the self-serving assertions of Appellant, the belated and facially inconsistent testimony of Vargas, and the elliptical statement of Aponte.[10] "[T]he reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight. [ ] Fur-

thermore, reasonableness in this context depends, in critical part, upon the information supplied by the defendant." *Basemore, supra* (citations omitted).

¶ 35 We have already noted our predecessor panel's comments about the legal deficiencies of Aponte's unsworn statement as evidence. We further note that it is even unclear from Aponte's statement whether he is referring to an encounter with the victim, otherwise unmentioned, or to the meeting with the unnamed driver who used to date Appellant's girl friend, and the cryptic reference to Appellant's radio, which he had just been discussing. The federal courts' invocation of Aponte as a reliable source for a theory of self-defense, and a credible basis for assessing ineffectiveness, is unsupported by the record and speculative.

¶ 36 Consequently, the only remaining basis for the federal courts to conclude that counsel was ineffective for not developing a theory of self-defense is the total, and apparently uncritical, acceptance of Vargas' belated and facially contradictory testimony as credible, a re-weighing of the evidence, a dubious proposition based on the record, and the self-serving PCRA testimony of Appellant himself.[11] Appellant

9. Section 2254(e)(1) provides: (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, **a determination of a factual issue made by a State court shall be presumed to be correct.** The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1) (emphasis added).

10. In pertinent part, Aponte's statement read as follows:

Q. What can you tell me about the night of 5/13/83 (Friday) around 8:50 pm?
A. I know I was standing on the corner with my cousin [Appellant] and a girl, this dude pulled up in a car and was grin[n]ing at my cousin, because he use[d] to go with

the same girl. They got out of the car and sat on the step where my cousin had his radio, my cousin said to [sic] excuse me, I want my radio, after that I picked up his radio and took it home with me. **As I started walking home, I saw my cousin and I asked him if he was alright, he didn't stab you or anything?** We caught a cab and I took him away from the area."
(Investigation Interview Record, Robert Aponte, 5/15/84) (emphasis added).

11. "As Melvin Goldstein died while the direct appeal of Rolan's conviction was pending, the **information regarding his representation of Rolan is gleaned from Rolan's testimony** at the Post Conviction Relief Act ("PCRA") hearing, correspondence between Goldstein and the District Attorney's office, and the trial

offers no other witness or evidence to corroborate the federal courts' version of events. Question the credibility of Vargas and Aponte, and the legal house of cards which is the framework of Appellant's "carry over" taint theory collapses.

¶ 37 In any event, on re-trial Appellant did present his theory of self-defense to a jury. Even if, as our predecessor panel suggests, Appellant's assertions and Vargas' affidavit were sufficient as an offer of proof, once he received a new trial it was again for the jury as fact-finder to assess credibility and to accept all, part or none of the evidence. *See Solano, supra.* Since Appellant has failed to prove a "constitutionally ineffective" cross-examination, his general ineffective assistance of counsel claim fails, as do his due process claims. *Washington, supra; Harvey, supra; Basemore, supra.*

¶ 38 Finally, Appellant's claims fail on the merits. Contrary to Appellant's sweeping and hyperbolic rhetoric, defense counsel **did** engage in meaningful, effective cross-examination of Santiago. He established that both Santiago brothers had been drinking heavily, that the abandoned house was without electricity and therefore dark, that the victim's girlfriend had recently left him for Appellant, and that despite Santiago's claim that Appellant demanded money, he did not stop to take any cash from either brother. Regarding the self-defense theory, counsel, like the prosecutor, did ask whether either brother had a weapon, and established that the witness was a convicted thief. (*See* N.T. Trial 5/16/84, at 54–58, 62–64, 66–69, 71–73). Appellant's claim of ineffective cross-examination does not merit relief.

¶ 39 Appellant has failed to prove that prior counsel was ineffective. Therefore, there was no taint carried over in his cross-examination of Francisco Santiago. Consequently, there was no manifest injustice, and the trial court properly followed the principle of coordinate jurisdiction and the law of the case in admitting the challenged testimony. *See Starr, supra; Cooper, supra; Strong; supra.* Appellant's first claim fails.

¶ 40 Appellant's second claim challenges the Commonwealth's comments during closing argument on the absence of the key defense witness, Vargas, from his prior trial. The Commonwealth argues that this claim is not presented in his statement pursuant to Pa.R.A.P.1925(b) and is, accordingly, waived. We agree.

¶ 41 "Where the trial court orders an Appellant to file a concise statement of matters complained of on appeal under Pa.R.A.P.1925, any issue not contained in that statement is waived on appeal. *Commonwealth v. Castillo,* [ ] 888 A.2d 775 ([Pa.]2005); *Commonwealth v. Lord,* [ ] 719 A.2d 306, 309 ([Pa.]1998)." *Commonwealth v. Robinson,* 931 A.2d 15, 25–26 (Pa.Super.2007).

¶ 42 As noted by the Commonwealth, even though paragraph 2 of Appellant's Rule 1925(b) statement mentions Vargas and his non-appearance, he did not raise the issue of the alleged prosecutorial misconduct.[12] When a "court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Butler,* 756 A.2d 55, 57 (Pa.Super.2000) *affirmed,* 571 Pa. 441, 812

transcript." *Rolan v. Vaughn,* (E.D.Pa.) *supra* n. 1 (emphasis added).

**12.** The specific matter complained of in the Rule 1925(b) statement is the trial court's alleged error in declining to give the jury a

proffered instruction about the holding of the court of appeals. *See* Rule 1925(b) Statement of Matters Complained of on Appeal, filed March 9, 2007, ¶ 2.

A.2d 631 (2002) (citation, brackets and quotation marks omitted).

¶ 43 Moreover, Appellant's claim would fail on the merits.

Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion.

In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one.

*Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa.Super.2005), *appeal denied*, 593 Pa. 726, 928 A.2d 1289 (2007) (citations and quotation marks omitted).

Generally, a prosecutor's arguments to the jury are not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict.

A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made.

*Commonwealth v. May*, 587 Pa. 184, 898 A.2d 559, 567 (2006), *cert. denied*, 549 U.S. 1022, 127 S.Ct. 557, 166 L.Ed.2d 414 (2006) (citations and internal quotation marks omitted).

¶ 44 Instantly, the Commonwealth was unarguably entitled to comment on the credibility of Vargas' belated support of the self-defense theory and his demonstrable failure to cooperate when first requested. For all the multiplicity of citations to case law for general principles, Appellant offers no specific authority supporting his claim that the prosecutor exceeded the reasonable latitude afforded the Commonwealth in fairly presenting a case to the jury and the well settled limits of fair response. *See Harris, supra; May, supra.* Appellant's argument would not merit relief.

¶ 45 Appellant's third claim challenges the Commonwealth's comments during closing argument about his failure to assert his self-defense claim at or before his original trial. We review this claim of prosecutorial misconduct also for abuse of discretion. *See Harris, supra.* "In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one." *Id.* at 927.

¶ 46 Here, once again, Appellant would have us treat the federal courts' decisions as granting him not only a new trial but also virtual immunity from any challenge to the credibility of his self-defense claim. We decline for the reasons already noted. Appellant's argument conflates the constitutional right against self-incrimination with the right and the duty of the Commonwealth to comment on the credibility of evidence presented in support of a self-defense claim, and flight. "While evidence of flight alone is not sufficient to convict one of a crime, such evidence is relevant and admissible to establish an inference of guilt." *Commonwealth v. Williams*, 532 Pa. 265, 615 A.2d 716, 721 (1992) (citations omitted). The Commonwealth was entitled to raise the question of credibility and to comment on his five month flight to New York in its closing argument. Appellant's third claim fails to merit relief.

¶ 47 In his fourth catch-all claim, Appellant asserts prosecutorial misconduct based on a list of alleged misstatements of evidence and improper comments which he argues warrant a new trial. He "summarizes" nine purported misstatements of the evidence, (*see* Appellant's Brief at 53), and attempts to incorporate by reference another list of bullet points from his lengthy statement of facts which purport to document another fifteen misrepresentations. All of these claims are waived for failure to follow each point with pertinent discussion and citation of authorities. *See* Pa.R.A.P. 2119(a); *see also Commonwealth v. Murchinson* 899 A.2d 1159, 1162 (Pa.Super.2006) (declining to review claim where there was limited explanation and development of argument).

¶ 48 Appellant follows these laundry lists with a few slightly more extended claims that the prosecutor improperly commented on his guilt and on the credibility of his witness, Vargas. These claims, heavily dependent on Appellant's previous arguments about credibility, are equally unpersuasive. We review the prosecutor's comments in context, not in a vacuum. *See May, supra.* For example, the prosecutor's statement, "Twenty-four years later, and Paulino Santiago, he's still dead, And you, sir, are just as guilty as you were on that night," in the context of a discussion of the evidence incriminating Appellant, is not an impermissible expression of personal opinion. When the prosecutor analogized the death of Francisco Santiago's brother to his own five brothers, the trial court *sua sponte,* admonished him to avoid personalizing his comments. Appellant made no further objection. (*See* N.T. Trial, 1/23/07 at 134). Appellant's claim that the prosecutor personalized the argument, not raised contemporaneously at trial, is waived and cannot be raised for the first time on appeal. See Pa.R.A.P. 302(a).

¶ 49 Appellant asserts that "each of these instances" constitutes a sufficient basis for a new trial; but also argues that "their cumulative effect" requires a new trial. (Appellant's Brief, at 56).

> [A]ppellant refers to his three previous claims and argues that the cumulative impact of the prosecutor's misconduct compels reversal.... This claim is mere makeweight, and a rather blatant attempt to bootstrap. We have found **no** misconduct on the part of the prosecutor, and no number of **failed** claims may collectively attain merit if they could not do so individually. Appellant's reliance upon error arising from the cumulative impact of "repeated **improper** remarks" is misplaced.

*Commonwealth v. Williams,* 532 Pa. 265, 615 A.2d 716, 722 (1992) (emphasis in original); *see also Commonwealth v. Williams,* 586 Pa. 553, 896 A.2d 523, 548 (2006). Appellant's cumulative impact argument does not merit relief.

¶ 50 Appellant's fifth claim challenges the trial court's admission of a 911 call [13] contemporaneous with the shooting, made at 8:46 P.M., which reported that someone had been shot and mentioned, on questioning from the radio dispatcher, that a man with a rifle was seen entering the abandoned building. The trial court properly admitted the call under Pa.R.E. 803(1) and (2) as a present sense impression and an excited utterance. *See also Davis v. Washington,* 547 U.S. 813, 827–28, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (statements made in response to 911 operator's questions to enable police assistance to meet ongoing emergency caused by physical threat not "testimonial" and, therefore, not subject to confrontation clause). Ap-

---

13. The call in question was one of three 911 calls reporting the incident.

pellant's claim that the caller never said she saw someone run into the house with a rifle, (**see** Appellant's Brief, at 64), is a tortured distortion of the record and clearly erroneous. The trial court properly admitted the evidence. *Davis, supra; Cooper, supra.* His claim merits no relief.

¶ 51 The last claim is that admission of Francisco Santiago's testimony that Appellant demanded money before shooting Paulino, after he had been previously acquitted of robbery, violated his constitutional protection against double jeopardy. As Appellant was not charged with robbery in the second trial, his more specific complaint is a collateral estoppel issue, that the court declined his motion *in limine* to exclude reference to the demand for money, which suggested a motive for the killing.[14]

> In the criminal law arena, the difficulty in applying collateral estoppel typically lies in deciding whether or to what extent an acquittal can be interpreted in a manner that affects future proceedings, that is, whether it reflects a definitive finding respecting a material element of the prosecution's subsequent case. We ask whether the fact-finder, in rendering an acquittal in a prior proceeding, could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. If the verdict must have been based on resolution of an issue in a manner favorable to the defendant with respect to a remaining charge, the Commonwealth is precluded from attempting to relitigate that issue in an effort to resolve it in a contrary way. Conversely, where an acquittal cannot be definitively interpreted as resolving an issue in favor of the defendant with respect to a remaining

charge, the Commonwealth is free to commence with trial as it wishes.

*Commonwealth v. States,* 595 Pa. 453, 938 A.2d 1016, 1021 (2007) (internal quotation marks omitted).

> The court is not, however, required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged, as appellant would have preferred.

*Commonwealth v. Lark,* 518 Pa. 290, 543 A.2d 491, 501 (1988).

¶ 52 Instantly, Appellant cites *Commonwealth v. Cohen,* 529 Pa. 552, 605 A.2d 1212 (1992), and *Commonwealth v. Tolbert,* 448 Pa.Super. 189, 670 A.2d 1172 (1995), in support of his argument that references to a demand for money should have been excluded. The cases are easily distinguished. In both the defendants were tried for lesser degrees of homicide after acquittal of first degree murder. The issue was whether evidence of specific intent could be introduced at the subsequent trial for a lesser degree of murder.

¶ 53 Here, the facts materially differ. Appellant was not tried for a different type of theft after acquittal on robbery. He was retried for murder and PIC, after the first jury convicted him on these charges. His argument that the robbery acquittal deprived the Commonwealth of the "only theory of the shooting that the Commonwealth put forth" (Appellant's Brief, at 68), which violated his rights against double jeopardy "and greatly prejudiced him" (*id.* at 69–70) is clearly erroneous as the first jury acquitted him of robbery but convicted him of first degree murder neverthe-

---

14. We note the Commonwealth's argument, in support of waiver, that Appellant failed to raise a double jeopardy issue in his motion *in limine.* (*See* Commonwealth's Brief, at 55).

less. Similarly, his reliance on *Ashe v. Swenson*, 397 U.S. 436, 442–46, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), involving a subsequent prosecution for robbery of a second victim, when the petitioner had previously been acquitted of robbery of another victim in the same episode, is misplaced.[15]

¶ 54 In any event, we find more pertinent analysis in *States, supra:* "[W]here an acquittal cannot be definitively interpreted as resolving an issue in favor of the defendant with respect to a remaining charge, the Commonwealth is free to commence with trial as it wishes." *Id.* at 1022 (citations omitted). Here, the previous acquittal on robbery clearly did **not** resolve the issue of murder, even for the first jury, which voted to convict Appellant.[16] The trial court also properly admitted the testimony of the demand for money as part of the history and natural development of the case. *See Lark, supra* at 501. Appellant's final claim does not merit relief.

¶ 55 Judgment of sentence affirmed.

---

**15.** The Supreme Court held that where the petitioner had been previously acquitted of the robbery of one of six players in a poker game, and "[t]he single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers," the federal rule of collateral estoppel, embodied in the Fifth Amendment guarantee against double jeopardy, precluded subsequent prosecution of defendant for robbery of a different poker player in the same incident. (*Id.* at 445, 90 S.Ct. 1189).

**16.** We further observe that while motive may provide evidence of intent, it is well settled that "proof of motive is not necessary for a conviction of first-degree murder." *Commonwealth v. Chmiel*, 585 Pa. 547, 574, 889 A.2d 501, 517 (2005). Here, even though the Commonwealth at the first trial introduced evidence that Appellant demanded money "to suggest a motive for the murder," (Commonwealth's Brief, at 56), the jury could have inferred that Appellant was motivated by anger from the underlying argument over who got the money, rather than solely by the intent to steal back the five dollars. Similarly, the jury could have credited the evidence that Appellant and the victim were romantic rivals, or simply did not get along.