J-S21043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GEOFFREY ELKINGTON, | |
| Appellant | No. 2926 EDA 2014 |

Appeal from the PCRA Order September 23, 2014
in the Court of Common Pleas of Chester County
Criminal Division at No.: CP-15-CR-0001376-2009

BEFORE: BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:          **FILED APRIL 08, 2015**

Appellant, Geoffrey Elkington, appeals from the order denying his counseled first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546. Appellant claims ineffective assistance of trial counsel. We conclude that under our standard of review Appellant has failed to prove his trial counsel was ineffective. Accordingly, we affirm.

On April 14, 2010, a jury convicted Appellant of nine counts of involuntary deviate sexual intercourse with a child; one count of attempted rape of a child; five counts of aggravated indecent assault (complainant less than thirteen years old); two counts of indecent assault; two counts of

_____

[*] Retired Senior Judge assigned to the Superior Court.

corruption of minors; and eleven counts of sexual abuse of children (possession of child pornography). (*See* Verdict Slip, 4/14/10).

We summarize the facts and procedural history of this case most pertinent to the issue on appeal. Appellant's conviction arose out of a course of conduct with the two minor children, then ages six and four, of a girlfriend he met online. With the consent and cooperation of the girlfriend[1] Appellant began taking sexually provocative photographs of the daughters in the nude, and in lingerie; he eventually proceeded to engage in numerous sexual acts with them, also photographed, particularly with the older daughter. (*See* PCRA Court Opinion, 9/23/14, at 1-2).

Of specific interest for purposes of this appeal, before trial the Commonwealth obtained a court order permitting it to photograph Appellant's feet. (*See id.* at 3). However, the Commonwealth never followed up.

The crux of Appellant's ineffectiveness claim is that his trial counsel should have introduced photographs of his feet, purportedly to prove that he did not have a "deformed" toe like the man in a photograph presented (and

---

[1] The former girlfriend, Geraldine Alexinas, pleaded guilty to related charges and was sentenced to not less than fifteen nor more than thirty years' incarceration in a state correctional institution. (*See* N.T. Trial, 4/13/10, at 69).

later admitted into evidence) at trial.[2] (Appellant's Brief, at 4, 5). The man in the photograph was shown to be having sexual contact (essentially fellatio) with one of the minor victims.

The man was naked, but his face was not visible. (*See id.* at 6; PCRA Ct. Op. at 2; Appellant's Rule 1925(b) statement, 11/3/14). Ms. Alexinas, the girlfriend/mother, testified that Appellant instructed her not to show his face in the photographs. (*See* N.T. Trial, 4/13/10, at 42). Nevertheless, two Commonwealth witnesses, Ms. Alexinas and Appellant's ex-wife, Carolee Gifford, identified the man in the photographs as Appellant. (*See* PCRA Ct. Op., at 2).

Additionally, Detective Roy Calarese of the Chester County District Attorney's Office, qualified as an expert in the field of computer forensics and data recovery, testified that he was able to retrieve email conversations between Appellant and Ms. Alexinas on Appellant's computer. (*See* N.T. Trial, 4/14/10, at 23-85). The emails included explicit, graphic discussions about Appellant having, and having had, oral sex with Ms. Alexinas' older

---

[2] Neither the photograph showing the allegedly "deformed toe", nor any of the other photographs admitted at trial or mentioned in the briefs or PCRA court opinion, is included in the record before us. Accordingly, we have no visual frame of reference for our review of the arguments involving the photographs, and rely exclusively on the verbal descriptions included in the record. "[T]he ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon the appellate courts." *Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006), *appeal denied*, 916 A.2d 632 (Pa. 2007) (citing Pa.R.A.P. 1931).

daughter. Detective Calarese also retrieved child pornography, including photographs of the victims in this case, and a montage of the child pornography on Appellant's equipment.

After a colloquy with the trial court, and conferring with counsel, Appellant exercised his constitutional right not to testify at trial. (*See id.* at 95-98). Appellant also confirmed his agreement with counsel's decision not to present any other witnesses or evidence. (*See id.* at 98).

After his conviction, the trial court determined Appellant to be a sexually violent predator. (*See* Notice of Registration Requirements, 12/16/10). On the same day, December 16, 2010, the court sentenced Appellant to an aggregate term of not less than twenty-five nor more than fifty years' incarceration in a state correctional institution.

Appellant filed a post-trial motion, which the court denied. (*See* Order, 3/21/11). On direct appeal, this Court affirmed the judgment of sentence in an unpublished memorandum. (*See Commonwealth v. G.E.*, 55 A.3d 144 (Pa. Super. 2012)). Our Supreme Court denied allowance of appeal, on June 19, 2013. (*See Commonwealth v. Elkington*, 69 A.3d 242 (Pa. 2013)). Appellant timely filed a *pro se* PCRA petition, on September 11, 2013. The PCRA court appointed counsel, who filed an amended petition.

The PCRA court held a hearing on June 2, 2014.[3] The "deformed toe" ineffectiveness question in this appeal was the only issue addressed at the hearing.[4] (**See** N.T. PCRA Hearing, 6/02/14, at 11). On September 23, 2014, the court issued an order, with an opinion, denying the amended petition. On October 17, 2014 Appellant filed a timely notice of appeal.[5]

Appellant raises one question for our review.

> Whether trial counsel was ineffective for failing to introduce photographs of Appellant's feet to prove he did not have the same deformed toe as the man identified in a photograph that was having sex with a victim in the case?

(Appellant's Brief, at 4).

Appellant argues that the Commonwealth witnesses who identified him as the man in the photograph did so on the basis that he had the same "deformed" toe as the man in the picture. (Appellant's Brief, at 5, 6). He

_____

[3] To avoid confusion, we note that the date of the hearing transcript, **May** 2, 2014, is inconsistent with the docket entries, and the date noted in the PCRA court opinion. We accept the date listed in the docket and confirmed by the court. Moreover, we note that the date discrepancy would have no impact on any of the facts or issues material to the appeal, or to our disposition.

[4] Counsel withdrew another claim (involving alleged discrepancies in date and time testimony). The PCRA court also permitted Appellant to identify various items he alleged were not provided in discovery. (**See** N.T. PCRA Hearing, 6/02/14, at 4). The Commonwealth provided certain materials that day. The court asked Appellant's counsel if any of the remaining requested items were relevant. Counsel replied no. (**See id.** at 7).

[5] Appellant timely filed a statement of errors, on November 3, 2014. **See** Pa.R.A.P. 1925(b). The PCRA court filed a Rule 1925(a) opinion, referencing its order and opinion of September 23, 2014. **See** Pa.R.A.P. 1925(a).

maintains that "[t]rial counsel was ineffective for not introducing photographs of the Appellant's feet to prove he did not have a disfigured toe." (*Id.* at 5). We disagree.

Our standard and scope of review for the denial of a PCRA petition is well-settled.

> [A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

*Commonwealth v. Spotz*, --- Pa. ----, 84 A.3d 294, 311 (2014) (citations and internal quotation marks omitted).

> To establish trial counsel's ineffectiveness, a petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for the course of action or inaction chosen; and (3) counsel's action or inaction prejudiced the petitioner. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

*Id.* at 303 n. 3. Furthermore,

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him.

*Id.* at 311–12 (most case citations, internal quotation marks and other punctuation omitted). "Counsel's assistance is **deemed constitutionally effective** once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test." *Commonwealth v. Rolan*, 964 A.2d 398, 406 (Pa. Super. 2008) (citations and internal quotation marks omitted) (emphasis in original). Additionally,

\* \* \*

This Court analyzes PCRA appeals "**in the light most favorable to the prevailing party at the PCRA level.**" [*Commonwealth v.*] *Rykard*, [55 A.3d 1177,] 1183 [(Pa. Super. 2012), *appeal denied,* 619 Pa. 714, 64 A.3d 631 (2013) (footnote omitted).] (emphasis added); *see also Spotz, supra* at 311 ("The scope of review is limited to the findings of the PCRA court and the evidence of record, **viewed in the light most favorable to the prevailing party at the trial level.**") (emphasis added).

Our Supreme Court has explained:

As a general and practical matter, it is more difficult for a defendant to prevail on a claim litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error. This Court has addressed the difference as follows:

[A] defendant [raising a claim of ineffective assistance of counsel] is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it 'could have reasonably had an adverse effect on the outcome of the proceedings.' *Pierce*, 515 Pa. at 162, 527 A.2d at 977. This standard is different from the harmless error analysis that is typically applied when determining whether the trial court erred in taking or failing to take certain action. The harmless error standard, as set forth by this Court in *Commonwealth v. Story*, 476 Pa. [391], 409, 383 A.2d [155], 164 [ (1978) ] (citations omitted), states that "[w]henever there is a 'reasonable possibility' that an error 'might have contributed to the conviction,' the error is not harmless." This standard, which places the burden on the

- 7 -

> Commonwealth to show that the error did not contribute to the verdict beyond a reasonable doubt, is a lesser standard than the **Pierce** prejudice standard, which requires the defendant to show that counsel's conduct had an actual adverse effect on the outcome of the proceedings. This distinction appropriately arises from the difference between a direct attack on error occurring at trial and a collateral attack on the stewardship of counsel. In a collateral attack, we first presume that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's Sixth Amendment right to counsel. **Pierce**, **supra**.

**Commonwealth v. Freeland**, 106 A.3d 768, 775-76 (Pa. Super. 2014) (emphasis in original; some citations omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court. However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Spotz**, 18 A.3d 244, 259 (Pa. 2011) (citations omitted). With these legal principles in mind, we review Appellant's claim.

Preliminarily, we note that Appellant's issue and his argument mischaracterize the evidence of record. First, Appellant merely makes the bald assertion that "the foot of the man in the photograph had a deformed toe." (Appellant's Brief, at 6). He fails to identify where in the record the evidence establishes that the man in the photograph had a "deformed" or "disfigured" toe. Therefore, he fails to comply with Pennsylvania Rule of Appellate Procedure 2119 which in pertinent part provides:

> **Reference to record.** If reference is made to the . . . evidence, . . . or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or

in a footnote thereto, a reference to the place in the record where the matter referred to appears (**see** Rule 2132) (references in briefs to the record).

Pa.R.A.P. 2119(c).

Furthermore, on independent review, we find no support in the record for the claim that the identification of Appellant as the faceless man in the photographs presented to the witnesses was based on a "deformed" toe. (Appellant's Brief, at 5, 6).

To the contrary, our review confirms that Ms. Alexinas, Appellant's former girlfriend and the mother of the victims, identified him as the man in the photograph, "[b]ecause of his leg and the way his penis is." (N.T. Trial, 4/13/10, at 71). Similarly, Carolee Gifford, Appellant's ex-wife, confirmed her identification of Appellant as the man in the photograph as follows: "I recognize the legs and the genitalia, and it is [Appellant's] arms and his roll of fat." (N.T. Trial, 4/14/10, at 14). On cross-examination, Ms. Gifford continued to maintain the basis of her identification, as follows:

> [Defense Counsel:] You indicated that one of the things that identified that picture is [Appellant's] roll of fat, I think you said?
>
> [Ms. Gifford:] There was a roll of fat; yes.
>
> Q. But you will agree with me that there is no face in these pictures?
>
> A. Yes.
>
> Q. So you're identifying it [sic] based on the legs looking like what you remember your husband's legs looked like?

A.      And genitalia.

Q.      Right.

(*Id.* at 17).

The only discussion about Appellant's toes appears to be during further cross-examination, when the following exchange occurred:

Q.      When the detectives came to you to interview you, they showed you — did they ask you anything about your ex-husband's feet?

A.      Yes.

Q.      They asked you whether or not there was anything unusual, any unusual characteristics about his feet?

A.      Yes.

Q.      You told the detectives you could not remember anything unusual about his feet?

A.      If that is what the record shows, that must be what I said; yes.

Q.      They asked you whether or not you recall if his second toe was longer than the first toe.  Do you remember that?

A.      Yes.

Q.      And you said:  I don't know?

A.      Right.

Q.      [You're] agreeing with me on that?

A.      Yes.

(*Id.* at 19).

Therefore, the only pertinent evidence of record tends to show that Appellant did not have a deformed toe at all. To the contrary, the ex-wife testified she told the police there was nothing unusual about his feet, and did not even testify that Appellant's second toe was longer than the "big" toe. Furthermore, importantly, neither woman based her identification of Appellant on the allegedly deformed toe. (*See* N.T. Trial, 4/13/10, at 71; N.T. Trial, 4/14/10, at 14). Appellant's claim lacks any foundation.

As a final point, we note that the PCRA court did not find Appellant credible. (*See* PCRA Ct. Op., at 5). We defer to the PCRA court's credibility determinations which are supported by the record. Appellant's claim has no arguable merit.

The PCRA court correctly noted that it need find only one prong which Appellant failed to meet to deny his ineffectiveness claim. (*See id.* at 5); *see also Rolan, supra* at 406.

Nevertheless, we note for completeness that Appellant failed to prove that trial counsel had no reasonable basis for her strategic decision not to pursue the "deformed" toe assertion. To the contrary, at the PCRA hearing, counsel gave her assessment that in view of the eyewitness testimony (which included two identifications) and the forensic evidence linking Appellant to the acts at issue, she didn't think it was a good strategy to proceed with a picture of the foot. (*See* N.T. PCRA Hearing, 6/02/14, at 29).

"Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Spotz*, *supra* 84 A.3d at 311-12 (quotation marks, other punctuation and citation omitted).

Here, Appellant baldly asserts that trial counsel did not have a reasonable basis for not obtaining a photograph of his foot. (*See* Appellant's Brief, at 7). This is unsupported by reference to controlling authority, does not refute trial counsel's articulated strategy, and offers no argument to establish that Appellant's alternative offered the potential for substantially greater success. Appellant does not refute counsel's reasonable basis for the strategy she selected.

Finally, Appellant fails to prove prejudice. "To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Spotz*, *supra* 84 A.3d at 312.

Here, Appellant's counsel merely surmised at the PCRA hearing that taking a photograph of the feet might have helped and would not have hurt the case: "No harm, no foul kind of thing." (N.T. PCRA Hearing, 6/02/14, at 39). This amounts to no more than sheer speculation. Mere speculation

- 12 -

that a course of action proposed in hindsight would have had little (presumed) downside is insufficient to overcome the presumption of effectiveness, or to prove prejudice. **See Spotz**, **supra** at 84 A.3d 311-12; **Rolan**, **supra** at 406.

Furthermore, Appellant argues on appeal that the PCRA court noted that the Commonwealth did not have "a compelling case." (Appellant's Brief, at 7-8). Our review of Appellant's citation confirms that the assessment was not that of the court, but of PCRA counsel. (**See** PCRA Ct. Op., at 3). Appellant fails to prove prejudice. His claim merits no relief.

Our reasoning differs from that of the PCRA court. "However, we may affirm the PCRA court's order on any basis." **Commonwealth v. Reed**, 107 A.3d 137, 144 (Pa. Super. 2014) (citation omitted).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/2015

- 13 -