**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4547
_____

FLORENCIO ROLAN,
Appellant

v.

BRIAN V. COLEMAN; THE DISTRICT ATTORNEY OF
THE COUNTY OF PHILADELPHIA; THE ATTORNEY
GENERAL OF THE STATE OF PENNSYLVANIA
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 08-cv-5438)
District Judge: Honorable Berle M. Schiller
_____

Argued January 23, 2012
_____

Before: FISHER, GREENAWAY, JR., *Circuit Judges,* and JONES[*], *District Judge.*

(Opinion Filed: May 17, 2012)

Bruce P. Merenstein, Esq. (argued)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
    *Counsel for Appellant Florencio Rolan*

Marilyn F. Murray, Esq. (argued)
Assistant District Attorney
District Attorney of the County of Philadelphia
Three South Penn Square
Philadelphia, PA 19107
    *Counsel for Appellees Brian V. Coleman, the District*
    *Attorney of the County of Philadelphia and the*
    *Attorney General of the State of Pennsylvania*

—————————

OPINION

—————————

GREENAWAY, JR., *Circuit Judge.*

Appellant Florencio Rolan appeals the District Court for the Eastern District of Pennsylvania's denial of his petition for habeas corpus. Rolan was convicted of

[*] Hon. John E. Jones III, District Judge, United States District Court for the Middle District of Pennsylvania, sitting by designation.

murdering Paulino Santiago in 1984. His original petition for habeas corpus sought relief based on his claim of ineffective assistance of counsel. The District Court granted the petition, and we affirmed. After a retrial, the jury convicted Rolan of murder again. He submitted a petition seeking a writ of habeas corpus. The District Court denied the petition. Rolan now appeals. For the reasons stated herein, we will affirm the District Court's order.

## I. <u>BACKGROUND</u>

In 1984, Florencio Rolan was convicted of first degree murder and possession of an instrument of crime in the 1983 shooting death of Paulino Santiago ("Paulino" or "Santiago"). The Superior Court summarized the events surrounding the shooting and leading up to Rolan's arrest as follows:

> On the evening of Friday, May 13, 1983, the victim, Paulino Santiago, and Robert Aponte were selling marijuana near 17th and Wallace Streets in Philadelphia. Paulino's brother, Francisco, and [Rolan] were nearby, among a crowd estimated at thirty to fifty people. Around 8:30 P.M. a driver pulled up to buy a "nickel bag," five dollars worth of marijuana. Aponte and Paulino Santiago argued over who should get the money for the sale. [Rolan] sided with Aponte, his cousin. The argument continued for about fifteen minutes until [Rolan] departed for the house of a friend across the street. Francisco Santiago went to an abandoned house, at 1629 Wallace Street, a few doors from the corner, to relieve himself. His brother followed.

3

It is undisputed that a few minutes later, inside the abandoned house, [Rolan] killed Paulino Santiago with a single shot to the chest from a .22 caliber rifle, then fled out a back alley and left the neighborhood. Police found the rifle in the alley about a block away from the abandoned house. The next day [Rolan] fled to New York City, and was not apprehended until the following November, when he returned to Pennsylvania after waiving extradition.

*Commonwealth v. Rolan*, 964 A.2d 398, 401 (Pa. Super. Ct. 2008).

During the trial, Francisco Santiago, the victim's brother, testified that Rolan argued with Paulino on a street corner. After arguing outside, Francisco testified that he and Paulino entered an abandoned house nearby and that Rolan followed, carrying a rifle. Rolan demanded money from Paulino. Rolan then shot Paulino and ran out of the house.

Another witness, Edwin Rosado, provided contrasting testimony. Rosado stated that Paulino entered the abandoned house after Rolan, not before. Rolan did not testify at trial. The jury convicted Rolan and sentenced him to death. Rolan appealed. The Pennsylvania Supreme Court affirmed the conviction on October 18, 1988.

In 1996, Rolan filed a petition under Pennsylvania's Post Conviction Relief Act ("PCRA"). Rolan testified at the PCRA hearing that Paulino entered the house after he was already inside, and charged at him with a kitchen knife. Rolan also testified that he entered the house unarmed, but found a loaded rifle lying on the floor of the house, picked it up, and fired at Santiago in self-defense. He also testified that

4

trial counsel, Melvin Goldstein, failed to investigate two witnesses who would have bolstered a self-defense theory: Daniel Vargas and Robert Aponte.

Vargas testified at the PCRA hearing. According to Vargas, Rolan entered the house unarmed, after which Paulino ran into the house with a kitchen knife in hand threatening to kill him. The PCRA court held that Goldstein had been constitutionally ineffective at the penalty phase of the trial and vacated Rolan's death sentence. After a penalty phase retrial, the jury sentenced him to life in prison. The Superior Court affirmed, and the Pennsylvania Supreme Court denied allocatur.

In 2001, Rolan filed a 28 U.S.C. § 2254 petition for writ of habeas corpus in the District Court.[1] The District Court granted the habeas petition, holding, among other things, that Goldstein had provided ineffective assistance of counsel by failing to investigate Vargas's testimony and failing to call him as a witness. This Court affirmed the District Court's decision granting Rolan's writ of habeas corpus. *See Rolan v. Vaughn*, 445 F.3d 671, 683 (3d Cir. 2006).

The Commonwealth retried Rolan in 2007. By that time, many of the key witnesses had passed away. The prior testimony of those now unavailable witnesses was read into the record. During the prosecutor's closing argument, he

---

[1] Rolan's 2001 federal habeas petition was stayed pending the result of the re-sentencing trial. In May 2004, after the jury re-sentenced Rolan to life in prison, the District Court conducted an evidentiary hearing on Rolan's habeas petition.

highlighted Vargas's absence from the 1984 trial and his (Vargas's) failure to testify until the 1996 PCRA hearing. The trial court instructed the jury that both Rolan and the Commonwealth knew of Vargas at the first trial, but that Rolan's counsel failed to call him as a witness. The trial court did not explain to the jury that Rolan's failure to call Vargas, at the first trial, was due to his trial counsel's ineffectiveness, as Rolan had requested. Rolan was convicted of first degree murder and possession of an instrument of crime. He received a sentence of life imprisonment.

Rolan appealed the second conviction. The Superior Court ordered him to file a Concise Statement of Matters Complained of on Appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) ("Rule 1925(b) statement"). Rolan filed the Rule 1925(b) statement. The Superior Court rejected all of the claims appearing in his Rule 1925(b) statement and affirmed the trial court. *See Commonwealth v. Rolan*, 964 A.2d 398 (Pa. Super. Ct. 2008). Rolan did not seek allocatur in the Pennsylvania Supreme Court and did not file a PCRA petition.

In November 2008, Rolan filed a 28 U.S.C. § 2254 petition for habeas corpus in the District Court. The Magistrate Judge assigned to the matter recommended in her Report and Recommendation ("R&R") that Rolan's petition for habeas corpus be denied. Specifically, the Magistrate Judge (largely referencing the Superior Court's substantive analysis) held, *inter alia*, that: (1) Rolan's claim of a due process violation based on the prosecutor's closing argument, regarding Vargas's failure to come forward earlier, was procedurally defaulted and, in the alternative, adopted the Superior Court's merits analysis denying the claim; (2) the Superior Court's conclusion that the prosecutor's comments

6

regarding Rolan's failure to raise self-defense during the first trial were not improper was neither contrary to, nor an unreasonable application of, Supreme Court precedent; (3) the Superior Court's rejection of Rolan's prosecutorial misconduct claim relating to the prosecutor's comments about his post-arrest silence was neither contrary to, nor an unreasonable application of, Supreme Court precedent; (4) the Superior Court's determination that Francisco Santiago's prior testimony was properly admitted at trial was neither contrary to, nor an unreasonable application of, Supreme Court precedent; and (5) Rolan's claim regarding the prosecutor's alleged misrepresentation of key facts and impermissible comments on inadmissible evidence was procedurally defaulted and, therefore, not subject to habeas review.

The District Court approved and adopted the Magistrate Judge's R&R by order dated November 2, 2010. Rolan filed a timely appeal. We granted a certificate of appealability only as to the following issues:

> (1) Appellant's arguments arising out of the prosecutor's statements regarding Daniel Vargas's failure to come forward earlier; (2) whether the prosecutor's statements regarding Appellant's failure to mount a self-defense case theory until 1996 constituted prosecutorial misconduct; (3) whether the prosecutor's comments regarding Appellant's post-arrest silence (but not his failure to testify at trial) violated his Fifth Amendment privilege against self-incrimination; (4) whether the introduction of Francisco Santiago's prior testimony was a violation of Rolan's Confrontation Clause

7

rights; and (5) whether the prosecutor's various alleged misstatements of the evidence in closing arguments rose to the level of a due process violation.

App. at 2a.

## II. **JURISDICTION**

The District Court had jurisdiction, pursuant to 28 U.S.C. § 2253. We have jurisdiction over the appeal from the District Court's final order denying the petition under 28 U.S.C. § 1291 and § 2253(c)(1)(A).

## III. **STANDARD OF REVIEW**

A. Procedural Default Challenges

Title 28 U.S.C. § 2254 requires that a habeas petitioner exhaust the remedies available in the state courts before a federal court can exercise habeas corpus jurisdiction over his claim. In order for Rolan to fulfill this requirement, he must have presented both the factual and legal substance of his claims in the state court's highest tribunal. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). Procedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue, *see Wenger v. Frank*, 266 F.3d 218, 223-24 (3d Cir. 2001); or, when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule, *see McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999). "Ordinarily, violation of firmly established and regularly followed state rules . . . will be adequate to foreclose review

of a federal claim. There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002) (internal quotation marks and citations omitted).

## B. AEDPA Deference

If the claim was not procedurally defaulted, and was adjudicated on the merits by the state court, we afford the state court's determinations deference under AEDPA. In doing so, we determine whether the state court's determinations,

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Absent adjudication on the merits, our review of the claim is *de novo*. *Bond v. Beard*, 539 F.3d 256, 263 (3d Cir. 2008).

## IV. **ANALYSIS**

Rolan's claims before this Court consist of three prosecutorial misconduct claims, a Fifth Amendment claim and a Confrontation Clause claim. We will address each of these claims in turn.

9

A.  Prosecutorial Misconduct

Rolan argues that his conviction should be vacated based on (1) the prosecutor's statements regarding Vargas's failure to testify earlier in the case ("Vargas statements claim"); (2) the prosecutor's comments about Rolan's failure to assert the self-defense theory until 1996 ("self-defense statements claim"); and (3) the prosecutor's alleged misstatements of evidence in his closing argument ("misstatements of evidence claim").  The District Court, adopting the Superior Court's conclusions, held that Rolan's claims regarding the prosecutor's comments about Vargas and alleged misstatements of evidence were procedurally defaulted.[2]  Rolan now appeals the procedural default conclusions as well as the District Court's determination that his prosecutorial misconduct claims each lack merit.

1. Procedural Default Issues

The District Court held that Rolan's Vargas statements claim was waived due to an independent and adequate state procedural ground—specifically, Pennsylvania Rule of Appellate Procedure 1925(b), which requires the appellant to file a concise statement of the matters complained of on appeal.  The Superior Court and District Court both held that Rolan had not asserted the Vargas statements claim in his Rule 1925(b) statement, and therefore, waived any relief based on those claims.  *See Commonwealth v. Robinson*, 931 A.2d 15, 25-26 (Pa. Super. Ct. 2007) ("Where the trial court

---

[2]  We do not address procedural default for the self-defense statements claim as both the Superior Court and the District Court addressed this issue on the merits.

orders an Appellant to file a concise statement of matters complained of on appeal under Rule 1925(b), any issue not contained in that statement is waived on appeal").

Rolan argues that paragraph 2 of his Rule 1925(b) statement sufficiently conveys his concerns about the prosecutor's statements regarding Vargas's testimony.[3] While we acknowledge that he raises this claim within the context of a broader argument regarding the trial court's jury instructions, we find that his Rule 1925(b) statement was sufficient to allow the court to identify his claims relating to the prosecutor's statements about Vargas in his closing arguments. *See Commonwealth v. Lemon*, 804 A.2d 34, 37 (Pa. Super. Ct. 2002) ("Pa. R. A. P. 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal."); *see also*

_____

[3] Paragraph 2 of Rolan's Rule 1925(b) statement states,

> 2. The Court erred in not instructing the jury that the federal court of appeals had held that [Petitioner's] original trial counsel was ineffective for not calling Daniel Vargas as a self defense witness at [Petitioner's] original trial, after the prosecutor had repeatedly argued in his closing argument that the jury should discredit Vargas's testimony because he did not testify on [Petitioner's] behalf until more than ten years after his original trial. (*Id.*)

*See Commonwealth v. Rolan*, No. CP-51-CR-0228931-1984, slip op. at 5-7 (C.C.P. Phila. Cnty., May 31, 2007).

11

*Commonwealth v. Butler*, 756 A.2d 55, 57 (Pa. Super. Ct. 2000) ("When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review."). Therefore, Rolan "substantially, if imperfectly," complied with the requirements of Rule 1925(b). *Lee*, 534 U.S. at 366-67. Consequently, Rolan's claim concerning the Vargas statements was not procedurally defaulted. The District Court's procedural default determination on this point is erroneous; thus, the issue is preserved for our review.

The District Court (adopting the Superior Court's rationale) also held that Rolan had waived his misstatement of evidence claim for failing to comply with Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure ( "Rule 2119(a)"). Rule 2119(a) states, "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Here, we must consider whether the Superior Court's application of Rule 2119(a) is appropriate for precluding federal habeas review. *See Lee*, 534 U.S. at 376.

Rolan's brief before the Superior Court provided detailed factual allegations with copious citations to the record. Rolan explicitly stated that the prosecutor misrepresented important pieces of evidence in his closing argument; pointed to fifteen examples of alleged misstated evidence, with citations to the record; incorporated the statement of facts into his argument section by reference and included a nine-page discussion on the issue of prosecutorial misconduct. In support of his misstatements of evidence claim, Rolan cited cases where the Pennsylvania Supreme Court reversed convictions based on an improper remark in

12

closing arguments, *see, e.g.*, *Commonwealth v. Smith*, 861 A.2d 894, 896-98 (Pa. Super. Ct. 2004); *Commonwealth v. Toth*, 314 A.2d 275, 277-78 (Pa. Super. Ct. 1974), and emphasized the cumulative effect of the numerous statements identified in the facts section. Although Rolan did not provide a verbatim recitation of each alleged misstatement in the argument section of his brief, he did provide ample notice of the nature of his claims by identifying the specific facts involved in the misstatements of evidence claim.

Rolan's discussion sufficiently identified his claim for the court. Given Rolan's substantial compliance with Rule 2119(a), procedural default is not appropriate. Therefore, the Superior Court's application of Rule 2119(a) should not preclude our consideration of Rolan's federal habeas claim. The District Court's procedural default determination on this ground is in error; consequently, this issue is preserved for our review.

### 2. Prosecutorial Misconduct Merits Analysis

Before considering the merits of Rolan's claims, we must first determine the appropriate standard of deference. Rolan asserts that AEDPA deference does not apply to the state court determinations regarding the Vargas statements claim because the state court never adjudicated the claim on the merits. Rather, the Superior Court (and later the District Court adopting the same rationale) dismissed his claim as defaulted under Rule 1925(b), and then found in the alternative, that his claim lacked merit. We must now determine whether AEDPA deference applies when a state court decides a claim on procedural grounds and, alternatively, on the merits.

13

The weight of authority of our sister circuits suggests that the merits analysis is owed AEDPA deference. *See Stephens v. Branker*, 570 F.3d 198, 208 (4th Cir. 2009) ("[W]e agree with our sister circuits that an alternative merits determination to a procedural bar ruling is entitled to AEDPA deference."); *Brooks v. Bagley*, 513 F.3d 618, 624-25 (6th Cir. 2008) ("[W]e must consider whether the court's alternative merits ruling receives AEDPA deference. We think that it does. The language of the statute does not draw a distinction between cases involving alternative rulings; it refers broadly to any claim that was adjudicated on the merits in State court proceedings." (internal quotation marks and citation omitted))[4]; *see also Zarvela v. Artuz*, 364 F.3d 415,

---

[4] In *Brooks*, the Sixth Circuit articulated a thoughtful analysis, justifying its application of AEDPA deference to alternative merits decisions:

> While the state court of appeals need not have addressed the claim on the merits once it identified a procedural bar, it surely had the authority to do so as an additional ground for decision-making this additional ground no less a "claim that was adjudicated on the merits in State court proceedings" than if the case had not presented a procedural-bar issue at all. In this respect, we see no material difference between this type of alternative ruling and another one – where a state court offers alternative *merits* grounds for rejecting a claim. Here, for example, the state court ruled that Brooks failed to satisfy the deficient-performance and prejudice prongs of an ineffective-assistance claim, even though it need only have

determined that Brooks failed to satisfy just one of these prongs to resolve the claim. Yet it would be strange to say that just one of these contentions was resolved on the merits or, worse, that neither one was. *See Wiggins v. Smith*, 539 U.S. 510, 534, (2003) (applying AEDPA deference to those prongs of *Strickland* that the state courts "reached").

This interpretation, moreover, would seem to favor judicial practices that in the main will benefit both sides in criminal cases. It is the rare criminal defendant who would prefer that the state courts not reach the merits of his constitutional claim. And it is the rare State that would object to a state court ruling that offers an additional ground for denying the defendant relief. Above all, this practice will "show a prisoner . . . that it was not merely a procedural technicality that precluded him from obtaining relief." *Carey v. Saffold*, 536 U.S. 214, 226 (2002). Just as a state court wishing to invoke an independent and adequate state ground to dispose of a case "need not fear reaching the merits of a federal claim in an alternative holding," *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (emphasis omitted); *see also White v. Schotten*, 201 F.3d 743, 750-51 (6th Cir. 2000), *overruled on other grounds by Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005) (en banc), so it need not fear losing the benefit of the doubt that AEDPA gives to state court rulings whenever it invokes an independent and

417 (2d Cir. 2004); *Busby v. Dretke*, 359 F.3d 708, 721 n.14 (5th Cir. 2004); *Johnson v. McKune*, 288 F.3d 1187, 1192 (10th Cir. 2002).

The Supreme Court's decision in *Harris v. Reed*, 489 U.S. 255 (1989) provides additional guidance on this point. In *Harris*, the Supreme Court considered the application of the adequate and independent state ground doctrine to claims on habeas review and held that state courts may both rely on state procedural bars and reach federal substantive questions in denying habeas relief:

> Moreover, a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935). Thus, by applying this doctrine to habeas cases, *Sykes* curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism,

> adequate state ground as an alternative holding.

*Brooks*, 513 F.3d at 624.

and comity.

*Harris*, 489 U.S. at 264 n.10. This language suggests that where a holding provides sufficient basis for the state court's judgment, it should be upheld by the federal court. The Supreme Court's language does not limit the federal court's consideration based upon whether such state court articulations form the primary basis for its decision, or an alternative and sufficient basis for the decision.[5]

We similarly believe that in referencing "adjudication on the merits," AEDPA draws no such distinction for alternative rulings. Rather, it suggests that where a state court has considered the merits of the claim, and its consideration provides an alternative and sufficient basis for the decision, such consideration warrants deference. Consequently, after considering our sister circuits' analyses alongside the Supreme Court's articulation in *Harris*, we will apply AEDPA deference to the Superior Court's alternative holding on the merits of Rolan's claim.[6]

---

[5] We note that this is consistent with our decisions in *Albrecht v. Horn*, 485 F.3d 103, 116 (3d Cir. 2007), in which we applied AEDPA's deferential standard of review to a claim that the state courts had found waived, but went on to address in the prejudice prong of an ineffective assistance of counsel claim, and in *Lambert v. Blackwell*, 387 F.3d 210, 239-40 (3d Cir. 2004), in which we applied AEDPA's deferential standard of review to a state court decision where the state court determined that it lacked jurisdiction, but went on to address the merits.

[6] Because the Superior Court considered all three of Rolan's

When analyzing a claim of prosecutorial misconduct, the key question is whether a state prosecutor's comments to the jury "so infec[ted] the trial with unfairness as to make the resulting conviction a denial of due process." *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quotation marks and citation omitted). More specifically, a "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001); *see also United States v. Rivas*, 493 F.3d 131, 140 (3d Cir. 2007) ("A mistrial is not required where improper remarks were harmless, considering their scope, their relation to the context of the trial, the ameliorative effect of any curative instructions and the strength of the evidence supporting the conviction." (citations omitted)). Invoking this standard, we address each prosecutorial misconduct claim in turn.

In his closing, the prosecutor made the following statements regarding Vargas's failure to testify at the previous trial:

Danny Vargas in 1984, characterized as an alibi witness, didn't want to cooperate, didn't want to give a statement, didn't want to testify.

Then thirteen years later, thirteen years later,—can you imagine this?—in 1996, they

---

prosecutorial misconduct claims on the merits, we will apply AEDPA deference in our review of the merit determinations of each claim.

18

parachute him in out of nowhere to say, oh, this was self-defense, I saw Paulino Santiago with a knife. . . . .

. . . .

. . . . And the only thing that was missing from Danny Vargas's testimony thirteen years after the crime were four little words:  Once upon a time.  Once upon a time. Because if ever there was a fairy tale being spun in a court of law by a witness, it was spun in 1996 by Danny Vargas.  Thirteen years later it was fairy tale time.

. . . .

Now, the defendant was arrested in . . . November of '83.  We have these proceedings in '84.  Vargas knows they're going on because the DA detective goes out to interview him as a possible witness for the defendant.  And yet he doesn't come to court, doesn't testify, doesn't tell the defendant or his family anything about seeing the victim with a knife.  Their witness.

. . . .

. . . . Where has he been for thirteen years, until he finally takes the stand and testifies at the proceedings in '96?

. . . . [H]ow do they even know thirteen years later to go speak to Mr. Vargas and take his affidavit?  Are they psychic?  Are you guys

psychic, that you somehow just know? What did you find, the phone book and look through it for all the Hispanic names and say Danny Vargas, this is a guy that might know something, let's go talk to him? . . . .

. . . .

. . . . [Vargas's 1996 affidavit] was the very first time anyone ever heard from Danny Vargas.

The very first time we have anything from Danny Vargas is in February of 1996 when he completes and signs under oath by a notary public this affidavit setting forth these facts, deposing these facts which he testified to in '96 when he testified were true, accurate and correct to the best of his information and belief.

App. at 1108a-1116a.

These comments were intended to convince the jury that Vargas's testimony was unreliable because he did not immediately come forward. However, Rolan avers that the comments were misleading because the jury was never told that this Court had found trial counsel, Goldstein, to be ineffective for not investigating Vargas as a witness. According to Vargas, the Commonwealth should not have been allowed to comment on Vargas's failure to testify without attributing the absence to the prior ineffective assistance of counsel ruling.[7] Vargas also argues that the trial

_____

[7] Rolan argues that the trial court infected the second trial

court's failure to provide a sufficient curative instruction further exacerbated the impact of the prosecutor's comments.[8]

with the errors from the first trial by allowing the prosecutor to reference Vargas's failure to come forward earlier. He suggests that our prior ineffective assistance finding extends to future proceedings and prohibits any further reference to the error. Rolan further asks that we grant a retrial to allow him to be tried without reference to Vargas's prior failure to testify. We find no such meaning in our prior decision.

In our 2006 decision, we held that Goldstein's failure to conduct a pretrial investigation after Rolan provided him with Vargas and Aponte's names, and his subsequent failure to present a self-defense theory of the case "fell below the objective standard of reasonableness." *Rolan*, 445 F.3d at 682. At the time of the second trial, counsel not only conducted an investigation, but also presented testimony in support of a self-defense theory of the case. Additionally, the alleged improper comments about Vargas were directed at his decision to come forward years after the shooting, thus providing information about the sequence of events, not Goldstein's prior inadequacies. Therefore, we reject Rolan's assertion that our prior findings were so broad that a second trial with the benefit of Vargas's testimony and a self-defense claim would still harbor effects of Goldstein's prior ineffectiveness.

[8] We note that Rolan did not move for a mistrial when the Commonwealth referenced Vargas's absence. Rather, he only asked for a curative instruction and made no formal objection to the instruction provided by the trial court. In light of these facts, we question the extent to which Rolan has properly preserved this claim.

Vargas's assertion that our prior ineffective assistance of counsel finding bears any impact on the second trial is without merit. We will, however, consider his due process claim, and determine whether the District Court properly found there to be no constitutional violation.

Considered in the context of the entire trial, the prosecutor's statements did not infect the trial with unfairness so as to constitute a denial of due process. *See Greer*, 483 U.S. at 765. The prosecutor's comments focused on the fact that Vargas failed to come forward with his version of the events for thirteen years. Although Rolan attempts to ascribe Vargas's prior absence solely to Goldstein's ineffectiveness, Vargas's testimony suggests that he made a personal decision not to provide additional information at the early stages of the case. When approached by law enforcement in May of 1984 (as a possible alibi witness for Rolan), Vargas did not disclose that he had information about the case and stated that he was not willing to provide a statement. He further testified that he did not tell anyone what he knew about the case until he spoke to Rolan's attorney in 1996. He stated that he did not tell police officers at the scene what he knew and did not reach out to family members of either Rolan or the victim to say that he had additional information. It was not until he saw Rolan in jail, that he decided to reveal his version of the events to Rolan's counsel – thirteen years later.

The Commonwealth's attempts to undermine Vargas's testimony were important because Vargas provided testimony that conflicted with the Commonwealth's theory of the case. According to the Commonwealth, his failure to come forward, or otherwise support Rolan's self-defense theory at the initial trial, had adverse implications regarding his credibility. However, the statements complained of were not

the only means by which the prosecution attacked Vargas's credibility. In fact, the jury was faced with other evidence that undermined Vargas's self-defense testimony (e.g., the fact that no knife was found at the crime scene despite his testimony that Paulino came charging in with a knife and the testimony of other witnesses supporting the Commonwealth's theory of the case). *See Greer*, 483 U.S. at 765-66 ("When a defendant contends that a prosecutor's question rendered his trial fundamentally unfair, it is important as an initial matter to place the remark in context." (internal quotation marks, brackets, and citation omitted)).

The trial court also provided an instruction to cure any prejudice raised by the prosecutor's closing arguments. App. at 1236a ("Ladies and gentlemen, Daniel Vargas was known to both the Commonwealth and the defense at the time of the prior proceedings in 1984. However, prior defense counsel failed to call Daniel Vargas at the earlier proceeding in 1984."). In light of the other evidence and the court's curative instruction, the denial of Rolan's due process claim based on the prosecutor's comments about Vargas was neither contrary to, nor an unreasonable application of, *Greer*.

Second, Rolan alleges prosecutorial misconduct based on the prosecutor's comments regarding his failure to previously raise a self-defense theory of the case. The prosecutor stated:

> They claim self defense. Twenty-four years later they claim self defense. Where was the self defense in May of 1983? Where was the self defense for the five months that that man was a fugitive from the law? Where was the self defense when he went to Brooklyn and

23

hid out until the police caught him? . . . .

. . . . Self defense? What does he do? Does he contact the police? Does he call them on the phone? Does he surrender himself? Does he get a lawyer? No. He runs and he hides.

. . . . Where was the self defense in 1984 when these proceedings were going on and the witnesses were being called to testify? . . . .

. . . . He never contacted the police, never got a lawyer, never surrendered, never called 911. . . . [A]t some point do you call the police and tell them, look, I killed somebody, I had to, he had a knife, I had no choice, he was going to stab me. That call never came. Never came.

When they did catch the defendant in November of '83, they brought him back to Philadelphia and they processed him and they told him multiple times, you are being charged with the murder of Paulino Santiago, sir, you are being charged with his murder. And the only statement he made was, "I know I need help." That's it. That's it. "I know I need help." That's it.

App. at 1107a-1110a, 1162a. In granting Rolan's first petition for habeas corpus, we held that Goldstein's failure to investigate and put forward a self-defense theory was objectively unreasonable. *See Rolan*, 445 F.3d at 682 ("Although the decision to forgo a self-defense claim is of the

type that may be entitled to a presumption of validity, Goldstein's decision not to present the defense cannot be according [sic] the normal deference to strategic choices because it was uninformed.").

Rolan now objects to the prosecutor's comments, arguing that they implied that Rolan did not assert a self-defense theory at trial because it was a fabrication, not because of his ineffective trial counsel. The prosecutor's comments about Rolan's failure to previously assert self-defense were not so injurious so as to result in a due process violation under *Greer*.[9] The statements were a permissible attack on Rolan's credibility. The prosecutor discussed Rolan's failure to assert self-defense alongside other evidence, such as his flight to New York after the shooting, to allow the jury to determine the reliability of his testimony that he acted in self-defense. Rolan attempts to characterize Vargas's unavailability at the initial trial and Rolan's failure to assert self-defense as resting solely on Goldstein's ineffectiveness. However, it is impossible for us at this juncture to know what would have happened if Goldstein had effectively investigated Vargas as a potential witness and whether or not Vargas's corroboration had any impact on Rolan's failure to otherwise assert self-defense. As the Superior Court previously stated, our prior determination of ineffectiveness does not grant Rolan both a new trial and "virtual immunity from any challenge to the credibility of his self-defense claim." *Commonwealth v. Rolan*, 964 A.2d 398, 410 (Pa. Super. Ct. 2008).

---

[9] We apply AEDPA deference to this claim as it was adjudicated on the merits by the Superior Court.

25

Because the trial court provided an instruction explaining why evidence of Rolan's self-defense theory was not previously presented and because there is other evidence in the record to further discredit Rolan's assertion of self-defense, the Superior Court's holding that the prosecutor's comments did not result in a due process violation was neither contrary to, nor an unreasonable application of, *Greer*. We will affirm the District Court's denial of federal habeas relief on this ground.

Third, Rolan asserts prosecutorial misconduct based on a number of alleged misstatements of the evidence in the prosecutor's closing argument. According to Rolan, the prosecutor articulated discrepancies between Vargas's affidavit and his PCRA testimony that did not exist. Specifically, Rolan argues that the prosecutor erroneously claimed that Vargas's affidavit stated that the Santiago brothers and Rolan all went into the house together. He also alleges that the prosecutor misstated evidence by referencing Vargas's testimony about Paulino Santiago entering the house with a knife and then stating that Vargas failed to include facts about the knife in his original affidavit. Additionally, Rolan claims that the prosecutor mischaracterized the following: Rosado's testimony about if and when he saw Rolan with the murder weapon; whether the 911 caller saw Rolan enter the house with a rifle; and the amount of time and extent of the police's search of the house. Finally, he avers that the prosecutor improperly emphasized the consistency of Francisco Santiago's statement to the police with his preliminary hearing and trial testimonies despite the trial court's ruling that the police statement was inadmissible. Not surprisingly, the Commonwealth asserts that the prosecutor's statements were fair and proper arguments within the context

of the trial.

Considering these statements within the context of the case, we find no constitutional violation.[10]  Rather, the record indicates that the alleged misstatements were either supported by other statements in the record or acceptable arguments based on the trial testimony and the defense's arguments.[11]

---

[10] Although the Superior Court did not specifically address each alleged misstatement (and alternatively held that these claims were procedurally defaulted), it concluded that Rolan's cumulative impact argument regarding the alleged misstatements lacked merit.  For this reason, we apply AEDPA deference to this claim.

[11] Our review of the record comports with the District Court's analysis, which we adopt in affirming its decision to deny habeas relief based on the prosecutor's alleged misrepresentations:

> The credibility of Daniel Vargas'[s] testimony was thoroughly addressed by both sides.  Petitioner asserts that the prosecutor made several misstatements concerning his testimony in his closing argument.  During his argument, the prosecutor reviewed Vargas'[s] testimony and compared it to his affidavit, pointing out discrepancies.  He also argued that Vargas had opportunity to tell the police what he knew about the murder of Paulin[o] Santiago prior to 1996; however, he did not do so.  This was a fair argument.

> Mr. Rolan also claims that the prosecutor

argued that Edwin Rosado saw Petitioner with the rifle at the same time of the shooting, and called it a blatant misrepresentation of the evidence. The record reveals that that is not exactly what the prosecutor said; he was properly commenting on the evidence presented at trial. It was also a fair response to defense counsel's statement of the evidence.

Additionally, Petitioner claims that the prosecutor misrepresented both the context and the content of the 911 call. These alleged misrepresentations were logical arguments and inferences from the evidence. Moreover, the 911 call was played for the jury during summation, allowing the jury to make their own inferences from the call.

Mr. Rolan further complained that the prosecutor misrepresented the evidence by saying the house was searched for 3 ½ hours. The inadequacy of the crime scene was brought up in the defense closing, to which the prosecutor appropriately responded.

Francisco Santiago's statement to police being mentioned in the prosecution's closing is another subject with which Mr. Rolan has taken issue. Though the statement was mentioned, the court sustained [Rolan]'s objection made at the time, and the statement was never admitted into evidence. The remarks of the prosecutor concerning Francisco Santiago were in response

Further, the trial court provided adequate instruction to cure any harm caused by the prosecutor's characterizations of the evidence. It instructed the jury to rely on the evidence presented at trial and to form their opinions of the case based on their independent recollections of the testimony, not the arguments of counsel.[12] The Superior Court's holding that

> to defense counsel's comments in his closing about Mr. Santiago's credibility.

*Rolan v. Coleman*, No. 2:08-cv-05438, slip op. at 41 n.20 (D.N.J. July 30, 2010).

[12] The trial court provided the following instruction:

> As I've told you before, what counsel says is not evidence. But even though these statements do not constitute evidence, you should consider them very carefully. In their closing statements, counsel will call to your attention the evidence that they consider material and will ask you to draw certain inferences from that evidence.

> Ladies and gentlemen, please keep in mind, however, that you're not bound by counsel's recollection of the evidence. It is your recollection of the evidence and your recollection alone which must guide you during your deliberations. If there is a discrepancy between counsel's recollection and your recollection, you're bound by your own recollection . . . .

App. at 1043a-44a.

the prosecutor's comments did not result in a due process violation was neither contrary to, nor an unreasonable application of, *Greer*. We will affirm the District Court's denial of Rolan's petition for habeas corpus on the basis of prosecutorial misconduct.

B. Fifth Amendment Claim

Rolan further avers that the prosecutor's comments about his post-arrest silence violated his Fifth Amendment privilege against self-incrimination.[13] The Fifth Amendment guarantees "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has recognized that where a prosecutor, on his own initiative, asks a jury to draw an adverse inference from a Mirandized criminal defendant's post-arrest silence or to treat that defendant's silence as substantive evidence of guilt, the defendant's privilege against self-incrimination is violated. *Doyle v. Ohio*, 426 U.S. 610, 620 (1976) ("We hold that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment.").

---

[13] This claim was adjudicated on the merits; therefore, we apply AEDPA deference to the Superior Court's determinations. *See Horn*, 570 F.3d at 115.

During trial, the prosecutor stated:

> When they did catch the defendant in November of '83, they brought him back to Philadelphia and they processed him and they told him multiple times, you are being charged with the murder of Paulino Santiago . . . . And the only statement he made was, "I know I need help." That's it. That's it. "I know I need help." That's it.

App. at 1162a. Rolan characterizes this statement as a comment on his failure to make a specific statement (i.e., the fact that he was silent on the matter). However, the record clearly indicates that the prosecutor did not comment on Rolan's post-arrest silence, but rather on the substance and limited nature of what he did say. Neither the Fifth Amendment nor *Doyle* shield a defendant from a prosecutor's comments about statements made to the police. Therefore, the Superior Court's decision to deny Rolan's claim on this ground was not contrary to, or an unreasonable application of, Supreme Court precedent as stated in *Doyle*.[14] We will

---

[14] We note that the District Court did not apply explicitly AEDPA deference in reviewing this claim. Rather, it identified *Griffin v. California*, 380 U.S. 609 (1965) as the relevant Supreme Court precedent and reviewed the state court's resolution for reasonable application. To that point, we, first, find *Doyle* to be more applicable to this case, as the *Griffin* analysis most pointedly addresses a prosecutor's

affirm the District Court's denial of Rolan's petition for habeas corpus for violation of the Fifth Amendment.

C.  Confrontation Clause

Because Francisco Santiago died before Rolan's retrial, the transcript of his testimony from Rolan's original trial and his preliminary hearing was read into evidence. Rolan now argues that the trial court's decision to admit Santiago's testimony violated his rights under the Confrontation Clause because he was deprived of an adequate cross-examination of the witness.[15]  Because we find no constitutional error, we reject Rolan's position that the Santiago testimony should be struck from the record and a retrial granted.

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that out-of-court testimonial statements may not be offered against a defendant at trial unless the declarant of the statement is unavailable and the defendant had an opportunity to cross-examine the declarant. *Id.* at 68 ("Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-

_____

adverse comments about a defendant's failure to testify at trial.  Second, to the extent that the reasonable application review is separate from AEDPA, we refuse to adopt such a standard of review in favor of AEDPA deference.

[15] This claim was adjudicated on the merits; therefore, we apply AEDPA deference to the Superior Court's determinations. *See Horn*, 570 F.3d at 115.

32

examination."). We now must consider whether the Superior Court's determination that admitting Francisco Santiago's testimony at trial did not violate Rolan's rights under the Confrontation Clause is contrary to, or an unreasonable application of, *Crawford*. *See* 28 U.S.C. § 2254(d)(1).

In Rolan's first habeas corpus proceeding, we held that his trial counsel had been constitutionally ineffective by failing to investigate Rolan's self-defense theory and failing to call two witnesses in support of that theory. Rolan now argues that his prior counsel was ineffective in his cross-examination of Francisco Santiago because prior counsel did not question him about inconsistent statements or explore a grant of immunity given by the Commonwealth. The parties do not dispute the fact that Rolan cross-examined Francisco Santiago when he testified at the first trial. The issue here is whether prior counsel's cross-examination of Francisco Santiago was adequate under *Crawford* despite our previous finding that counsel was ineffective for other reasons. We hold that it was more than adequate.

*Crawford* does not provide a specific standard for determining whether a defendant had an opportunity to cross-examine a witness, but it does suggest that the prior opportunity must be adequate. *Crawford*, 541 U.S. at 57 ("Our later cases conform to [the holding in *Mattox v. United States*, 156 U.S. 237 (1895)] that prior trial or preliminary hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine." ). As the Supreme Court has previously stated, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam).

33

In analyzing Rolan's initial ineffectiveness claim, the Superior Court found that prior counsel's cross examination "established that both Santiago brothers had been drinking heavily, that the abandoned house was without electricity and therefore dark, that the victim's girlfriend had recently left him for Appellant, and that despite [Francisco] Santiago's claim that Appellant demanded money, he did not stop to take any cash from either brother." *Rolan*, 964 A.2d at 409. It also noted that both Goldstein and the prosecutor asked whether either Francisco or Paulino Santiago had a weapon. *Id*. ("Regarding the self-defense theory, counsel, like the prosecutor, did ask whether either brother has a weapon"). It also specifically addressed Rolan's claim that Francisco Santiago was not adequately cross-examined by Goldstein because Goldstein did not fully explore his immunity agreement with the Commonwealth and concluded that it was a baseless argument.[16] There is no Supreme Court precedent to suggest that Goldstein's cross-examination was inadequate, and the record does not support such a conclusion. Consequently, the Superior Court's finding was not contrary to, or an unreasonable application of, *Crawford*. We will affirm the District Court's denial of Rolan's writ of habeas corpus on this ground.

---

[16] In doing so, the Superior Court noted that Francisco Santiago's testimony at the preliminary hearing (before making the agreement with the Commonwealth) was consistent with his trial testimony. Those consistencies combined with the fact that the jury was aware of his criminal record indicated that additional disclosure of the immunity agreement would have been of little consequence as impeachment evidence. *Rolan*, 964 A.2d at 407.

## V. CONCLUSION

For the reasons stated above, we will affirm the District Court's order denying Rolan's petition for writ of habeas corpus.