NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1197
_____

BRIAN KING,
Appellant

v.

SUPERINTENDENT COAL TOWNSHIP SCI; DISTRICT ATTORNEY
PHILADELPHIA; ATTORNEY GENERAL PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-18-cv-02292)
District Judge:  Honorable Edward G. Smith
_____

Submitted under Third Circuit LAR 34.1(a)
June 2, 2021

Before:  HARDIMAN, PHIPPS, and COWEN, *Circuit Judges*.

(Filed: August 26, 2021)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

Brian King, an inmate serving a sentence of life imprisonment without parole for second-degree murder in Pennsylvania, appeals from the District Court's denial of his petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254. In his petition, he argues that the state trial court violated the Confrontation Clause of the Sixth Amendment, made applicable to states through the Fourteenth Amendment, by limiting his cross-examination of a key prosecution witness. The District Court, however, did not reach the merits of that issue, concluding instead that it had been procedurally defaulted. In exercising appellate jurisdiction over the District Court's final decision, *see* 28 U.S.C. §§ 1291, 2253(a), we will affirm for the reasons below.

I. BACKGROUND

*A. Robberies and Homicide*

As Mischief Night turned to Halloween morning in 2005, Philadelphia police officers investigated several armed robberies and a homicide. A short time after the police arrived at the scene of the robberies, King and his friend, Tyreek Wilford, were caught fleeing the scene. Following his arrest, King admitted his involvement in robbing five individuals who happened to be walking down the street that night, but he denied any participation in the final robbery and shooting death of Steven Badie, who was sitting in a parked car around the corner. King blamed Wilford for those latter crimes, and Wilford blamed King.

The divide between the former friends widened further when Wilford decided to cooperate with the prosecution and King did not. Through an agreement with the

2

Commonwealth, Wilford pleaded guilty to third-degree murder and other charges related to the robberies in exchange for his testimony against King. Though he still faced a discretionary sentencing range of 103.5 to 207 years' imprisonment, Wilford avoided the risk of life imprisonment without parole – the mandatory minimum sentence for first- and second-degree murder in Pennsylvania, *see* 18 Pa. Cons. Stat. § 1102(a), (b); 61 Pa. Cons. Stat. § 6137(a). King, by contrast, pleaded not guilty and proceeded to trial in the Court of Common Pleas of Philadelphia County.

### B. The Jury Trial

During the four-day jury trial, Wilford testified for the prosecution. On direct examination, he incriminated King in the robbery and shooting of Badie. Wilford explained that, as they were returning to the car following the initial robberies, King suddenly demanded that Wilford hand him the gun. According to Wilford, King then approached the driver's side of a nearby parked car, where he had words with the driver (Badie) before firing a series of shots into the car – striking and killing Badie. At the end of the direct examination, Wilford testified about his cooperation agreement with the prosecution, explaining the lesser charges to which he pleaded guilty and the sentencing range that he faced as a result of that plea.

On cross-examination, King's counsel sought to undermine Wilford's testimony by probing his motives for testifying against King. Specifically, King's counsel asked Wilford whether he decided to enter a plea bargain "to avoid life in prison." Trial Tr. at 233:18–22 (JA 250). The Commonwealth objected to that question because – as later explained at sidebar – Pennsylvania law prohibits a jury from considering a criminal

3

defendant's potential sentence. *See Commonwealth v. Carbaugh*, 620 A.2d 1169, 1171 (Pa. Super. Ct. 1993) ("The jury is not to know or to consider sentences when deliberating."); *see also Commonwealth v. Epps*, 240 A.3d 640, 649 (Pa. Super. Ct. 2020). And since the mandatory sentence for first- or second-degree murder would apply as equally to King as to Wilford, such an inquiry would impermissibly reveal the sentence that King faced. The court sustained the Commonwealth's objection on those grounds, but King's counsel sought to overturn that ruling by stressing that the inquiry was critical to undermining Wilford's testimony:

> I can confront the witness with the fact he was facing life imprisonment and chose to make a bargain to escape that time to serve less than life under third degree murder. Judge, it would be reversible error to not permit me to confront the witness with the fact that the penalty for first degree and second degree murder, for which this plea bargain allows him to escape, which is the incentive to curry favor and a motive and interest and bias for him to tell something other than the truth to this jury, is the heart of cross-examination in this case.

Trial Tr. at 236:9–22 (JA 250). King's counsel further maintained that the jury needed to know that Wilford "made a bargain to escape a mandatory penalty" and that counsel could not convey that without saying "life without parole." *Id.* at 238:10–11, 240:18–20 (JA 251). But at the close of the sidebar, the court maintained its prior ruling that King's counsel could ask "exactly those questions without using the term life imprisonment." *Id.* at 236:23–25 (JA 250).

Cross-examination resumed within those bounds. The judge interjected a question, asking whether Wilford understood that he faced "substantially more time in prison" without the cooperation agreement. *Id.* at 242:9–13 (JA 252). From there,

4

King's counsel asked – three separate times – if Wilford knew that without cooperating he might "never get out of jail." *Id.* at 242:18–20, 243:2–3, 244:2–3 (JA 252). As that line of inquiry continued, Wilford testified that he "never thought [he] was going to do life," and King's counsel seized that opportunity by asking, "You could do life?" *Id.* at 244:7, 11 (JA 252).

Those attempts to discredit Wilford did not ultimately dissuade the jury from convicting King of second-degree murder, 18 Pa. Cons. Stat. § 2502(b), six counts of robbery, *id.* § 3701, possessing an instrument of crime, *id.* § 907, and criminal conspiracy, *id.* § 903. The trial court sentenced King to the mandatory sentence of life imprisonment without parole for second-degree murder, along with concurrent sentences for the remaining offenses.

### C.  State-Court Appeals

In appealing his conviction to the Superior Court of Pennsylvania, King challenged the ruling limiting his cross-examination of Wilford. He argued that the trial court "abused its discretion" and violated his "right to confrontation under the United States and Pennsylvania Constitutions." King Direct Appeal Br. 21 (June 2, 2008) (JA 78). The Superior Court, however, declined to consider the constitutional issue based on Pennsylvania Rule of Appellate Procedure 302(a). *See* Pa. R. App. P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). That issue-preservation rule requires "a timely and specific objection at trial." *Commonwealth v. Montalvo*, 641 A.2d 1176, 1184 (Pa. Super. Ct. 1994). The Superior Court thus reasoned that the Confrontation Clause issue had been "waived due to King's

5

failure to raise it at any point during his trial." *Commonwealth v. King*, No. 2332 EDA 2007, at 6 n.3 (Pa. Super. Ct. Aug. 14, 2009) (citing Pa. R. App. P. 302(a)) (JA 24–25). Nevertheless, the Superior Court considered King's challenge to the scope of cross-examination as a matter of state law, concluding that the trial court did not err or abuse its discretion in limiting the cross-examination of Wilford.

King petitioned the Supreme Court of Pennsylvania to review that decision, but that court declined to hear the appeal. *See Commonwealth v. King*, 997 A.2d 1176 (Pa. July 7, 2010) (unpublished table decision).

### D. The Federal Habeas Petition

In 2018, King collaterally challenged his conviction through a *pro se* petition for a writ of habeas corpus in the District Court. *See* 28 U.S.C. § 2254. Among the four grounds alleged in the petition, King asserted that the state trial court violated his rights under the Confrontation Clause by restricting his inquiry on cross-examination into Wilford's avoidance of a mandatory sentence of life imprisonment through a plea bargain. A Magistrate Judge recommended that the petition be denied, reasoning that King's Confrontation Clause challenge was procedurally defaulted based on the Superior Court's finding of waiver. The District Court overruled King's objections, adopted the Magistrate Judge's report and recommendation, and denied the petition. King timely appealed, and this Court granted King's application for a certificate of appealability as to whether he had procedurally defaulted that claim. *See* 28 U.S.C. § 2253(c); *see also Shotts v. Wetzel*, 724 F.3d 364, 370 (3d Cir. 2013) (reviewing the adequacy of a state procedural default *de novo*).

6

## II. DISCUSSION

The writ of habeas corpus provides a remedy for a person detained in violation of federal law. *See* 28 U.S.C. § 2241(c)(3). But when the person is in custody pursuant to a state-court order, initial recourse is not to federal court. Instead, the prisoner must exhaust available state-court remedies before seeking federal habeas relief. *See id.* § 2254(b)(1)(A); *see also id.* § 2254(c) (providing that exhaustion does not occur if the prisoner "has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement, however, has an exception for a federal claim that a state court rejected "based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). In such a situation, known as a procedural default, the federal claim is "deemed exhausted," *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000), due to the "absence of available State corrective process," 28 U.S.C. § 2254(b)(1)(B)(i). Even so, the procedurally defaulted claim is ordinarily barred as a matter of comity and federalism. *See Coleman v. Thompson*, 501 U.S. 722, 729–31 (1991); *cf. id.* at 750 (setting forth two methods for excusing a procedural default).

The procedural default doctrine has three relevant components. It applies to (i) a state procedural ruling that is (ii) independent of a federal law ruling and (iii) adequate to support the state-court decision. A state procedural ruling is independent if it does not "depend[] on a federal [law] ruling." *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). Such a ruling is adequate if the procedural rule is "firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (citation omitted).

7

In this case, King disputes only the last component – adequacy. *See Albrecht v. Horn*, 485 F.3d 103, 115 (3d Cir. 2007) ("[A] defaulted claim may be reviewed in federal habeas upon a showing that the procedural rule applied was not 'independent' and 'adequate.'" (citation omitted)). For the first two components, King acknowledges that the Superior Court rejected his constitutional claim on procedural grounds (the issue-preservation rule), and he concedes that that ruling is independent of a federal constitutional concern. Even for the third component (adequacy), King admits that Rule 302(a) is – in general – an adequate procedural rule, as it is firmly established and regularly followed in Pennsylvania. *See, e.g.*, *Commonwealth v. Colavita*, 993 A.2d 874, 891 (Pa. 2010) ("It is a settled principle of appellate review . . . that courts should not reach claims that were not raised below." (citing Pa. R. App. P. 302(a))); *see also Werts v. Vaughn*, 228 F.3d 178, 194 (3d Cir. 2000) (holding that a waived claim under Rule 302(a) was procedurally defaulted and unreviewable in a federal habeas petition). Without disputing the adequacy of the state procedural ruling as a general matter, King challenges only its specific application: he contends that application of the issue-preservation rule in his case was exorbitant and therefore inadequate. *See Lee v. Kemna*, 534 U.S. 362, 376 (2002) (explaining that "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question"); *see also Shotts*, 724 F.3d at 371–74; *Rolan v. Coleman*, 680 F.3d 311, 317–19 (3d Cir. 2012); *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 657–58 (3d Cir. 2011).

The exorbitant-application exception applies only to a "small category" of "exceptional cases." *Lee*, 534 U.S. at 376, 381. Three "guideposts," along with other

"relevant circumstances," determine whether a particular case fits into the narrowly circumscribed exorbitant-application exception. *Shotts*, 724 F.3d at 371–72 (citation omitted). The "most important" of those considerations examines whether, despite a technical failure to abide by the state procedural rule, the petitioner "substantially complied" with the "essential requirements" of the state procedural rule, thereby serving the purpose of that rule. *Lee*, 534 U.S. at 382, 385, 387. Another guidepost examines whether state precedent demands "flawless compliance" with the procedural rule under the "unique circumstances" of the petitioner's case. *Id.* at 382. And the final guidepost considers whether the petitioner's "perfect compliance" with the procedural rule could have altered the state court's decision. *Id.* at 381, 387. On balance, those guideposts counsel against a finding of an exorbitant application of the issue-preservation rule.

As to the first guidepost, King did not substantially comply with the essential requirements of Rule 302(a). That issue-preservation rule "ensures that the trial court that initially hears a dispute has had an opportunity to consider the issue." *Commonwealth v. Hill*, 238 A.3d 399, 407 (Pa. 2020) (citation omitted). To that end, it requires "a timely and specific objection at trial." *Montalvo*, 641 A.2d at 1184. Though King's counsel argued at length against the trial court's ruling, at no point did he develop an argument premised on federal rights, let alone rights under the Confrontation Clause. To be sure, King's counsel did use the phrase "confront the witness" in countering the Commonwealth's objection. Trial Tr. at 236:9–10, 15 (JA 250). But his argument was grounded in state-law evidentiary principles by asserting, for instance, that the Commonwealth "opened the door" to his intended question. *Id.* at 239:23 (JA 251). *See*

9

*generally Commonwealth v. Birch*, 616 A.2d 977, 978 (Pa. 1992) (explaining that "the scope and limits of cross-examination are within the discretion of the trial judge" (citation omitted)). He also argued that sustaining the Commonwealth's objection would be "reversible error" under Pennsylvania law. *See* Trial Tr. at 236:14, 238:6 (JA 250–51); *id.* at 238:19–22 (JA 251) ("[Y]ou think in your opinion it is reversible error, counsel, *based upon the law of the State of Pennsylvania.*" (emphasis added)). By arguing on state-law grounds, King did not afford the trial court the opportunity to resolve the alleged constitutional issue during trial, and thus he did not substantially comply with the essential requirements of the issue-preservation rule, nor did he fulfill the purpose of that rule. Therefore, the first and most important guidepost strongly counsels against a finding of an exorbitant application of a state procedural rule. And unless the remaining guideposts or other relevant circumstances overwhelmingly compel a contrary conclusion, King cannot qualify for the exorbitant-application exception.

The second guidepost – whether the case involves any unique circumstances that would render unexpected or unfair the state procedural ruling – also cuts against King. Pennsylvania case law is clear that the issue-preservation rule applies to constitutional issues. *See Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. Ct. 2008) ("Even issues of constitutional dimension cannot be raised for the first time on appeal."); *Commonwealth v. Berryman*, 649 A.2d 961, 973 (Pa. Super. Ct. 1994) ("An appellate court should not address constitutional issues unnecessarily or when they are not properly presented and preserved in the trial court for our appellate review."). And the state appellate courts have frequently found Confrontation Clause claims, in particular, to be

waived absent a specific objection in the trial court. *See, e.g.*, *Commonwealth v. May*, 887 A.2d 750, 760–61 (Pa. 2005); *Commonwealth v. Leaner*, 202 A.3d 749, 770–71 (Pa. Super. Ct. 2019); *Commonwealth v. Sauers*, 159 A.3d 1, 9–10 (Pa. Super. Ct. 2017); *Commonwealth v. Smith*, 47 A.3d 862, 865–66 (Pa. Super. Ct. 2012); *Commonwealth v. Schoff*, 911 A.2d 147, 157 (Pa. Super. Ct. 2006). Thus, it is neither unexpected nor unfair that Rule 302(a) would preclude King's Confrontation Clause argument.

The final guidepost – whether perfect compliance with Rule 302(a) would have been futile – carries negligible weight here. For context, King does not present a particularly strong Confrontation Clause argument. That is so because the Confrontation Clause does not afford an "absolute right to inquire into the precise sentence a government witness might face absent his cooperation." *United States v. Noel*, 905 F.3d 258, 269 (3d Cir. 2018). And the rest of Wilford's cross-examination belies King's argument that, had the jury known that detail, they would have had a "significantly different impression of [his] credibility." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986). Consequently, it may be that, had King properly developed a Confrontation Clause argument during trial, the state court would still have ruled against him and sustained the Commonwealth's objection. From that perspective, it could be argued that King's perfect compliance with the issue-preservation rule would have been futile. But that would be merely because his Confrontation Clause challenge is not meritorious enough to alter the trial court's ruling. And it cannot be that the futility guidepost more favorably rewards *weaker* unpreserved constitutional arguments. Accordingly, when the

11

state procedural rule relates to issue preservation, as it does here, the futility guidepost carries negligible weight.

On balance, then, the guideposts counsel against a finding of an exorbitant application of the issue-preservation rule. And King does not identify any other relevant circumstances that would support such a finding in this case. Without meeting the exorbitant-application exception, King procedurally defaulted his Confrontation Clause claim: the state procedural ruling that prevented consideration of that claim was adequate and independent.

For that reason, the District Court did not err in declining to reach the merits of King's constitutional challenge, and we will affirm the judgment of the District Court.